# Richmond

CITY OF RICHMOND v. SOUTHSIDE DAY NURSERY ASSOCIATION.

November 28, 1966.

Record No. 6314.

Present, All the Justices.

*Jack N. Herod, Assistant City Attorney (J. E. Drinard, City Attorney*, on brief), for the plaintiff in error.

*Waller H. Horsley (Ralph H. Ferrell, Jr.; Hunton, Williams, Gay, Powell and Gibson*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

In this appeal we are called upon to decide whether Southside Day Nursery Association, a non-stock, non-profit corporation, is exempt from real estate taxes on its property known as 1420 McDonough street in Richmond under the provisions of § 183 of the Virginia Constitution and § 58-12 of Code 1950, as amended. Southside operates a day nursery school on the property.

Southside filed on December 30, 1963, pursuant to Code, § 58-1145, an application for the correction of allegedly erroneous assessments by the City of Richmond on the property in question for the years 1961 through 1963. Prior thereto Southside had not been assessed for taxation on this real estate. By agreement, the application was later amended to include the years 1964 and 1965. After an *ore tenus* hearing, the trial court determined that the assessments complained of were erroneous and void. It ordered that the property be stricken from the "Land Books" and also directed a refund of the taxes paid under protest for the years 1961 through 1964, amounting to $6,500.28.

In its assignments of error, the City of Richmond contends that the court erred in granting an exemption to Southside either under the provisions of § 183 of the Virginia Constitution or under Code, § 58-12, which states in some detail what property is exempt from taxation. On the other hand, Southside takes the position here, as it did in the court below, that it is entitled to an exemption under each of subsections (d), (e) and (f) of § 183 and the related portions of Code, § 58-12.[1] Section 183 reads in part:

"§ 183. * * * Unless otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes:

*  *  *  *  *

"(d) Property owned by public libraries, incorporated colleges or other incorporated institutions of learning, not conducted for profit, * * *. But this provision shall apply only to property primarily

---

(1) In § 58-12, the General Assembly has undertaken to specify various properties which are exempt from taxation. Subsection (4) thereof includes the exemptions set forth in subsection (d) of § 183 of the Constitution; subsection (5) includes the exemptions stated in subsection (e) of § 183; and the exemptions contained in subsection (6) are identical to those specified in subsection (f) of § 183. The General Assembly has no authority to create exemptions from taxation. Section 183 expressly prohibits such authority. *Hollywood Cemetery Co.* v. *Commonwealth*, 123 Va. 106, 96 S.E. 207.

used for literary, scientific or educational purpose or purposes incidental thereto. * * *.

"(e) Real estate belonging to, actually and exclusively occupied and used by, * * * Young Men's Christian Associations, and other similar religious associations, * * * conducted not for profit, but exclusively as charities, * * *.

"(f) Buildings, with the land they actually occupy, * * * belonging to any benevolent or charitable association and used exclusively for lodge purposes or meeting rooms by such association, together with such additional adjacent land as may be necessary for the convenient use of the buildings for such purposes; * * *."

It was stipulated, among other things, that Southside is a non-stock, non-profit corporation, and was organized on June 16, 1930, and that its charter, as amended on August 26, 1955, states these purposes:

"To own, maintain and operate a day nursery in said City for the children of working parents; to do such things and provide for said children such maintenance, support and education facilities as in the judgment of the Trustees will best promote their physical and educational welfare; to do any and all things necessary, incidental or germane to the above purposes; to receive and expend contributions, donations, bequests, devises, grants and conveyances, of money, property and lands for the said purposes; to charge said parents a small compensation (not yielding a profit) for the services rendered their children to the end that they will not consider themselves the subject of charity, all such revenues from parents' compensation, contributions, donations, bequests, devises, grants and conveyances, of money, property and lands, shall be assets of the corporation for the purpose of carrying out the purposes for which it is chartered, and no person, firm or corporation, by way of dividend, distribution or allotment, shall receive any profit or gain from the business or activities of the corporation."

The evidence shows that children between the ages of three and six are accepted at the nursery from the area comprising the City of Richmond and the Counties of Henrico and Chesterfield. The daily attendance averages approximately sixty children. Parents are charged a fee of between $1.25 and $12.50 per week for each child, according to their ability to pay. Forty percent of Southside's operating funds are derived from the United Givers Fund, an organized charity. The officers and members of the board of directors receive no salary or other compensation for their services.

Southside is licensed by the Virginia Department of Welfare and Institutions and operates between the hours of 6:30 a.m. and 5:30 p.m., Monday through Friday, during each month of the year. All children are present by 8:30 a.m. and none leaves before 4 p.m. There are separate rooms for the different age groups and each group has its own program and supervision. The programs include working puzzles, story telling, nursery rhymes, musical games, arts and crafts, rest and health inspection. The children are also taught the days of the week, numbers, and to count.

In addition to a maintenance and custodial staff, Southside has an executive director and four supervisors for the children. They are all college trained in the field of childhood education; belong to the Early Childhood Education Association, whose purpose is to "update teaching methods for the young child"; and have attended "workshops" and conferences relating to the education of young children.

The educational materials used by the staff include "film strips for young children, * * * records for rhyme and music appreciation", an extensive "selection of approved children's books" (some used in Richmond public schools), and "special equipment that is recognized by experts for the pre-school child."

According to Mrs. Margaret D. Miller, Supervisor of Children's Agency Section of the Virginia Department of Welfare and Institutions, Southside is a "model [nursery] for persons interested in establishing centers to * * * observe the program, the equipment, the physical plant, the general environment that is so important to training the young child." Mrs. Miller also stated that Southside is not a "babysitting organization", and that it has "a very fine educational program".

Miss Etta Rose Bailey, who served for twenty-five years as principal of the Maury Elementary School located near the nursery and had been a member of Southside's board, testified that many of Southside's children, after reaching public school age, had entered her school "as junior primary children"; that she had observed the "educational influence" of their training in these children; that Southside has provided a program of pre-school education whereby the children "are practicing every day in a very immature way exactly the same skills, attitudes and habits toward learning that are required when they reach the first grade in school", and that educational publications stress the great importance of "pre-school education."

Miss Bailey further stated: "I don't think you would get an edu-

cator today to agree that you can deal with the educational development of a child disassociated from his total life. We use the term continuously in education, 'the whole child.' When you educate him, you have to deal with the whole child."

H. I. Willett, Superintendent of Richmond Public Schools testified:

"* * * I believe very strongly in pre-school education. I think not only is it important for the five-year-olds, but there is a strong movement under consideration now to extend it beyond that. Both of the last two White House conferences, 1950 and 1960, went on record as advocating the extension of it. And they suggested age three as a beginning point.

"Most of the educational associations interested in that have so declared. And there is a reason for it, of course. In your urban areas where you have a greater percentage usually of culturally deprived or disadvantaged, there is a need for schools or some agency to furnish experiences that normally had been assumed would be furnished by the home. The question of attitudes, of understanding, of muscular coordination, speech, ability to make decision, adjust to other children, all of those are factors that are a prelude to reading.

\* \* \* \* \*

"So, a part of the job of pre-school education is to give to all children enough background so that they can develop, so that they can create a self-image that is necessary preparatory to learning to read, for example."

The City of Richmond offered no evidence.

In light of the expert testimony and the activities carried on by Southside, as shown by the record, it cannot be seriously questioned that its program contributes to the intellectual and educational development of the child.

Since the early case of *Commonwealth* v. *Lynchburg Y.M. C.A.*, 115 Va. 745, 80 S.E. 589, this court has applied a liberal interpretation to the exemption provisions of § 183 of the Virginia Constitution. There, we said:

"It is insisted by the Commonwealth that the provision of section 183 of the Constitution must receive a strict construction. The general rule is that provisions exempting property of individuals or private corporations from taxation must be strictly construed, taxation of such property being the rule and exemption from taxation the exception. One of the reasons for this is that all such persons should bear their fair share of the burdens of taxation, and that

lessening the burden of one increases the burdens of others. But as the policy of the State has always been to exempt property of the character mentioned and described in section 183 of the Constitution, it should not be construed with the same degree of strictness that applies to provisions making exemptions contrary to the policy of the State, since as to such property exemption is the rule and taxation the exception." 115 Va. at pp. 747, 748, 80 S.E. at p. 590.

For other cases in which we have employed a liberal construction of the exemption provisions of § 183, see *Norfolk v. Nansemond Supervisors*, 168 Va. 606, 192 S.E. 588; *County of Hanover v. Trustees of Randolph-Macon College*, 203 Va. 613, 125 S.E. 2d 812; *St. Andrew's Ass'n v. City of Richmond*, 203 Va. 630, 125 S.E. 2d 864; *Supervisors v. Medical Foundation*, 204 Va. 807, 134 S.E. 2d 258; *City of Richmond v. United Givers Fund*, 205 Va. 432, 137 S. E. 2d 876.

Applying a liberal interpretation of the exemption provisions of § 183 (d), *supra*, and Code, § 58-12 (4) to the evidence presented in the case at bar, we hold that Southside Day Nursery is an incorporated institution of learning, not conducted for profit, and that its property in question is primarily used for "an educational purpose or purposes incidental thereto." Hence, the real estate involved is exempt from taxation.

Having reached this conclusion, it becomes unnecessary to decide whether Southside qualifies for exemption under the provisions of subsections (e) and (f) of § 183.

The City also assigned as error the introduction of Southside's letter exhibit No. 4. It was objected and excepted to on the grounds that it was hearsay and irrelevant. The letter was dated October 21, 1955, and was written by the U.S. Treasury Department to Southside. It advised Southside that the organization was exempt from Federal income tax "as it is shown that you are organized and operated exclusively for charitable and educational purposes." Here, we are concerned with an interpretation of our Constitution relating to taxation on real estate. In our view, the letter was irrelevant, but the admission of it did not constitute reversible error.

The judgment appeal from is

*Affirmed.*