## Richmond

### COMMONWEALTH OF VIRGINIA v. RESEARCH ANALYSIS CORPORATION.

August 30, 1973.

Record No. 8182.

Present, All the Justices.

*Sally T. Warthen, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for plaintiff in error.*

*Carrington Williams (Boothe, Prichard & Dudley, on brief), for defendant in error.*

I'ANSON, J., delivered the opinion of the court.

Research Analysis Corporation (RAC) filed in the court below two petitions for correction of allegedly erroneous sales and use tax assessments made by the Department of Taxation against RAC's

leased[1] computer for the years 1966 through 1970. The cases were consolidated for trial and the trial court, sitting without a jury, held that under the provisions of Code § 58-441.6(q) the computer was exempt from the tax and the assessments were erroneous. We granted the Commonwealth a writ of error to the judgment.

Code § 58-441.6(q) exempts the following from sales and use taxation:

"Tangible personal property purchased for use or consumption *directly and exclusively in research and development in the experimental or laboratory sense.*" (Italics supplied.)

Pursuant to Code § 58-441.41 the State Tax Commissioner in 1969 promulgated § 1-92 of the Sales and Use Tax Rules and Regulations, which in pertinent part provides:

"**§ 1.92. Research and Development.**—The tax does not apply to tangible personal property purchased for use or consumption *directly and exclusively* in research and development *in the experimental or laboratory sense.* Such research and development does not include efficiency surveys, management studies, consumer surveys, economic surveys, advertising, promotions, or research in connection with literary, historical or similar projects.
. . . .
"Types of projects which qualify as research and development include: (a) research and development of new products; (b) research and development of new uses for existing products; (c) research and development for improving existing products; (d) research and development in advance technology; (e) basic research."

The Commonwealth contends that the exemption granted by the statute does not, by its terms or its intended meaning, exempt property used in the type of activities in which RAC is engaged.

The pertinent evidence shows that RAC, a corporation organized under the laws of the District of Columbia and doing business in Virginia, leased a computer for use in its work as a consultant under its contracts with the United States Army. RAC's work consisted primarily of analysis of simulated battlefield situations for the Army. The computer was used to devise a methodology or formula to aid

---

1. Code § 58-441.4 imposes a tax on the sale or lease of tangible personal property; Code § 58-441.5 imposes a tax on the use or consumption of such property.

the Army in future decision-making situations, such as a formula devised for the Army's use if it were confronted with an "outbreak of a large-scale conflict, simultaneously, in several parts of the world."

RAC also performed work in the field of commercial aviation. It consisted of a study of the financial and practical feasibility for operating a supersonic airplane (SST), including the facilities needed and the management of personnel.

An engineering professor testified that he observed on one afternoon RAC's operations and believed them to be research and development in the experimental or laboratory sense. He characterized RAC's work as "operations research," which in his view as an engineer was a valid enterprise in the research and development field, but he did not claim to be an expert in "operations research." He said that "in the trade" research and development has become one word, but there are distinctive differences between the two fields. Research and development was defined as a search for truth with subsequent application of the knowledge obtained through research to finding solutions to problems and to developing the solutions. He stressed that his expertise dealt with finding solutions to problems, while scientists deal with product development or the improvement of existing tangible products.

In determining whether the computer used by RAC in conducting its activities is exempt from the payment of the tax assessments under the provisions of the statute, we must keep in mind that taxation is the rule and not the exception; and that statutory tax exemptions are strictly construed against the taxpayer, with doubts resolved against the exemptions. *Commonwealth* v. *Manzer*, 207 Va. 996, 1000, 154 S.E.2d 185, 189 (1967); *Commonwealth* v. *Community Motor Bus Co.*, 214 Va. 155, 198 S.E.2d 619 (1973), this day decided.

The construction of a statute by a State official charged with its administration is entitled to great weight. *Miller* v. *Commonwealth*, 180 Va. 36, 42, 21 S.E.2d 721, 723 (1942); *Commonwealth* v. *Radiator Corp.*, 202 Va. 13, 19, 116 S.E.2d 44, 48 (1960).

"Operations research," stated by RAC's expert witness as the principal work done by it, is defined as the scientific study of the operations of an organization or system which is oriented toward providing managers or executives of the organization with "optimum" policies, designs or solutions to problems involving interaction of the

organization's components. *C. Churchman, R. Ackoff & E. Arnoff, Introduction to Operations Research* 6-9 (1957); *S. Beer, Decision and Control: The Meaning of Operational Research and Management Cybernetics* 512 (1966); *W. Duckworth, A Guide to Operational Research* 14-15 (1962). In effect, "operations research" concerns formulation of a "systems approach" or methodology for future management decisions on the most efficient use of an organization's resources. *N. Enrick, Management Operations Research* 17-18 (1965); *F. Hillier & G. Lieberman, Introduction to Operations Research* 5-6 (1967).

It is evident that RAC's primary activity of providing decision-making methodology for the Army and the SST project was operations research or management studies. The statute, however, restricts the exemption to research and development in the experimental or laboratory sense, and the rules and regulations of the Department of Taxation construing the statute of which the legislature is presumed to be cognizant exclude management studies and those of like character from the purview of the statutory exemption.

"Research and development," as the name implies, has been usually defined as involving a two-stage process: a research stage, and a development stage. The research stage entails a systematic study or search directed toward new scientific knowledge or new understanding of a particular subject. The development stage, in turn, consists of gradual transformation of the new knowledge or new understanding garnered from the research stage into a tangible product or process. *N. Terleckyj, Research and Development: Its Growth and Composition* 10-11 (1963); *D. Roman, Research and Development Management: The Economics and Administration of Technology* 4-5 (1968).

"Experimental" pertains to a test or trial, a tentative procedure or policy adopted to discover, confirm, or disprove something doubtful. See Webster's Third New International Dictionary 800 (Unabridged, 1971 ed.); 15A Words and Phrases 458. "Laboratory" pertains to a place where scientists perform experimental work. Webster's Third New International Dictionary, *supra*, at 1260; 24 Words and Phrases 31.

Thus, the usual definition of research and development stresses new products or new improvements in the use of existing products, and definitions of experimental and laboratory accent basic scientific research.

These definitions manifest that the legislature intended Code § 58-441.6(q) to be a restrictive provision exempting only that tangible personal property purchased or leased and used in scientific or traditional physical science research and development which generates new tangible products or new processes, or the improvement of existing products or processes, not mere management studies, reports or surveys. Accordingly, the State Tax Commissioner's construction of § 58-441.6(q) was proper in excluding management studies, RAC's primary activity, and the taxes assessed against RAC's computer were valid.

For the reasons stated, the judgment is reversed and final judgment is here entered for the Commonwealth.

*Reversed and final judgment.*