# Richmond

COMMONWEALTH OF VIRGINIA, DEPARTMENT OF TAXATION
v. PROGRESSIVE COMMUNITY CLUB OF
WASHINGTON COUNTY, VIRGINIA
INCORPORATED.

April 28, 1975.

Record No. 740601.

Present, All the Justices.

*Charles K. Trible, Assistant Attorney General (Andrew P. Miller, Attorney General,* on briefs), for appellant.

*James P. Jones (Penn, Stuart & Eskridge,* on brief), for appellee.

Harrison, J., delivered the opinion of the court.

The court below held that Code § 58-441.6 (t) exempts the Progressive Community Club of Washington County, Virginia, Incorporated from the payment of sales taxes on tangible personal property purchased and used by it in connection with its child development headstart program. The Commonwealth appeals an order directing a refund of the amounts held to be erroneously assessed.

On October 10, 1973, the Department of Taxation assessed Progressive for failure to pay state sales taxes during the period December, 1966, through May, 1973. Progressive filed its application for correction of the erroneous assessment alleging, in part, that it was exempt from such taxation by Code § 58-441.6 (t). This section provides a tax exemption for "[t]angible personal property for use or consumption by a college or other institution of learning, a hospital or a licensed nursing home, provided such college, institution of learning, hospital, or licensed nursing home is not conducted for profit".

Progressive is a nonstock, nonprofit corporation operated "to promote the social welfare of the citizens of the Count· of Washington and the City of Bristol, Virginia, and for charitable and educational purposes. . . ." It was established under a federal program as one of the community action agencies of the Office of Economic Opportunity, Department of Health, Education and Welfare. Among its wide range of programs Progressive administers the "Child Development Headstart Program". In connection with this program it operates three child care centers, two in churches and one in a former elementary school. At the time of the trial below the program had eighty-one children enrolled, ages three and four, and a total of twenty-four employed personnel, twelve of whom worked directly with the children. The staff members working with children were required to have a high school education. Three of the twelve persons so employed held college degrees, and one of these three had received formal training in early childhood education.

The centers are operated according to standards established by the Department of Health, Education and Welfare, and the program is licensed by the Virginia Department of Welfare and Institutions as "child care centers". The license relates to the quality of the facility and not to the educational aspects of the program. Ninety percent of all children enrolled were required to fall within the low income level established by the federal government.

The centers maintain a curriculum involving "units of work". These units run from two to four weeks and include "math concepts, science, reading readiness, nature, the community around them, art, music and various things of this nature". Although "basic learning skills" are taught, the children are not

taught to read or to write. Their eye and hand coordination is developed; they learn to differentiate between a large block and a small one; and they take nature walks, look at picture books and use art materials in a supervised environment. The program involves an open classroom concept which is unstructured and allows a child to select the activity in which he will participate at a given time. The centers primarily offer educational programs for preschool children. The children are present at the center for at least four hours each day. Because the majority of the children are from economically disadvantaged homes, one of the objectives of the program is to care for children while their parents work and to place them in a stimulating environment.

When the centers were originally established they were primarily for the benefit of five-year-olds. After a public kindergarten program was established in the public schools, the centers commenced the policy of accepting five-year-olds only upon referral by the public school system or the health and welfare departments.

A great deal of evidence revolved around the name of the program operated by Progressive. We think it immaterial whether the program is called day care, prekindergarten, child care or child development headstart. It is obvious that Progressive provides custodial care, training and instruction to the three-and four-year-old children entrusted to its care. Neither do we think that it can be successfully argued that children of this age, or younger, are not benefitted by the type of program which is offered, or that the program does not have educational value.

The issue in this case is not whether a headstart program has educational value for those exposed to it, but whether, in the operation of this program, Progressive is a "college or other institution of learning". Obviously it is not a college, so the issue narrows to whether Progressive is an "other institution of learning" within the purview of Code § 58-441.6 (t).

■ We would observe that Article X, Section 6 (f) of the revised Virginia Constitution, adopted July 1, 1971, provides that "Exemptions of property from taxation as established or authorized hereby shall be strictly construed".

In the Report of the Commission on Constitutional Revision submitted January 1, 1969, the Commission noted that the entire

area of tax exemptions was one of major concern to which it gave extensive study. While recognizing the desirability of modernizing and shortening the provisions of then Section 183 of the Constitution, it concluded that it would not be practical to attempt the removal of exemptions then existing, especially in the case of specifically named organizations. The Revisors then said in their Commentary that:

"At the same time, the Commission believes that it would not be in the best interests of the Commonwealth to create yet more exemptions from taxation. The basic policy ought to be one of equality in the tax structure, and exemptions, widely applied, undercut this policy. Moreover, tax exemptions already are having serious effects on local finances, and widening the circle of exemptions would only magnify that problem." Report at 305.

The Commission proposed certain changes and, with reference to the paragraph which is presently Article X, Section 6 (f), said:

"In paragraph (h) a requirement of strict construction is included. The Supreme Court of Appeals of Virginia in *City of Richmond* v. *Southside Day Nursery Ass'n*, 207 Va. 561, 151 S. E. 2d 370 (1966), stated at page 565: 'Since the early case of *Commonwealth* v. *Lynchburg Y. M. C. A.*, 115 Va. 745, 80 S. E. 589 (1914), this court has applied a liberal interpretation to the exemption provisions of § 183 of the Virginia Constitution.'

"The Commission believes that in light of the apparent inclination of the General Assembly to expand the statutory definition of the constitutional exemptions, a strict construction of the Constitution is desirable. This recommendation is in accord with the general rule that tax exemptions should be strictly construed.

"A proviso has been added to paragraph (h) which is intended to protect existing exemptions from the strict construction requirements." Report at 306.

The Commission's recommendation that the Constitution be amended to require a strict construction of exemptions of property from taxation was approved by the General Assembly of Virginia and by vote of the people.

This general rule of strict construction has been applied by us in all cases involving Code § 58-441.6 decided since the adoption

of the revised Constitution. In *Commonwealth* v. *Community Motor Bus*, 214 Va. 155, 157, 198 S. E. 2d 619, 620-21 (1973), which involved the sales and use tax, we said: "Statutes granting tax exemptions are construed strictly against the taxpayer. When a tax statute is susceptible of two constructions, one granting an exemption and the other not granting it, courts adopt the construction which denies the exemption." To the same effect, see *Commonwealth* v. *Research Analysis*, 214 Va. 161, 163, 198 S. E. 2d 622, 624 (1973), also involving the retail sales tax, where we said: "[W]e must keep in mind that taxation is the rule and not the exception; and that statutory tax exemptions are strictly construed against the taxpayer, with doubts resolved against the exemptions." In *Golden Skillet Corp.* v. *Commonwealth*, 214 Va. 276, 278, 199 S. E. 2d 511, 513 (1973), we stated:

> "Here, the taxpayer claims to be exempt from the taxes assessed against it, relying upon an exemption contained in the first paragraph of Code § 58-441.6. In determining whether the taxpayer is entitled to that exemption, we follow a rule of strict construction. Exemption from taxation is the exception, and where there is any doubt, the doubt is resolved against the one claiming exemption. [Citing case]."

Maryland's Court of Appeals recently stated the same rule in *Perdue, Inc.* v. *State Dept. of Assess.*, 264 Md. 228, 232-33, 286 A. 2d 165, 167 (1972), to be:

> "It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State. In other words, 'to doubt an exemption is to deny it'."

Progressive argues that the Virginia decisions referred to do not properly state the rule of construction applicable to Code § 58-441.6 (t) because "none involved institutions of learning", and that *Richmond* v. *Day Nursery Ass'n*, 207 Va. 561, 151 S. E. 2d 370 (1966), is dispositive here.

We make no effort to distinguish between the type of program afforded by Progressive and that afforded by the Day Nursery Association. We doubt there is a valid distinction. However, *Day Nursery* was limited to property tax exemption. More

importantly, the case was decided prior to July 1, 1971, and at a time when the policy of the state, as we then conceived it to be, was to exempt property of the character mentioned and described in Section 183 of the Constitution of Virginia and not to construe that section with the same degree of strictness that applied generally to provisions making exemptions contrary to the policy of the state. We observed there that "as to such property exemption is the rule and taxation the exception". 207 Va. at 566, 151 S. E. 2d at 374.

Other cases cited by Progressive do not involve Virginia's Retail Sales and Use Tax Act, and all were decided prior to the effective date of the revised Constitution.

■ Applying the rule of strict construction, as the Constitution now mandates, we must decide if Progressive is the type of "other institution of learning" referred to in Code § 58-441.6 (t). Section 1-96 of the Virginia Retail Sales and Use Tax Rules and Regulations, promulgated by the State Tax Commissioner pursuant to the authority granted in § 58-441.41, provides with respect to § 58-441.6 (t):

> "The term 'college or other institution of learning' contemplates the existence of a faculty, a student body and prescribed courses of study. The 'other institution of learning' must be something like a college under a rule of statutory construction generally applicable where general words follow a particular designation.
>
> "The tax does not apply to sales of tangible personal property to *nonprofit* schools, colleges and other institutions of learning at any level, for use or consumption by them, and paid for out of their funds."

The Attorney General argues that if the General Assembly had not intended for the word "college" to limit the scope of the words "or other institution of learning", it would not have inserted "college" in the statute since it would have been superfluous. He further says the word "college" has a more precise meaning and that no one could seriously contend that a college would not be entitled to an exemption as an institution of learning. He then calls for the *ejusdem generis* rule of statutory construction and an application of the maxim *noscitur a sociis*. The maxim is applied where general words follow particular

words and restricts the former by way of qualification. *Sellers* v. *Bles*, 198 Va. 49, 92 S. E. 2d 486 (1956).

We have no difficulty in deciding that the program operated by Progressive, whether we call it a day care center or a child development headstart, bears no resemblance to a college, and if we relate "other institutions of learning" to "colleges" it is obvious that Progressive is not such an institution.

Manifestly this court did not relate the Day Nursery with a college for there we held that it was "an incorporated institution of learning". But as we have observed, this was prior to the revision of the Constitution of Virginia, a revision made subsequent to and with full knowledge of our decision in *Day Nursery*.

We do not question the services Progressive renders to the communities it serves, the validity of the program it offers the children who attend its centers, or the benefits derived by the children and their parents. However, in light of the revised Constitution we cannot say that Progressive is an "institution of learning" as such institutions are commonly known and accepted, or as was within the contemplation of the General Assembly when Code § 58-441.6 (t) was enacted.[1] Every argument advanced by Progressive could have been as well-advanced had its program been geared to one-and two-year-olds, or two-and three-year-olds, instead of children ages three and four. Manifestly the children benefitted educationally and intellectually by exposure to Progressive. It would be almost impossible for the eighty-one children not to profit educationally and otherwise from a program conducted by a staff of twenty-four employed personnel, twelve of whom devote their entire time to the children. Such an organization takes on many aspects of an institution of learning. However, its potential must necessarily be limited by the youth and immaturity of its charges. If Progressive qualifies as an institution of learning, so would many less ambitious, and not as well-funded, nonprofit organizations designed to afford custodial

---

[1] It is noted that during the 1974 session of the General Assembly of Virginia House Bill No. 444 was offered February 4, 1974, and that during the 1975 session House Bill No. 1414 was offered January 20, 1975. The sole object of each bill was to amend § 58-441.6 (t) by adding to the section the words "or by a nonstock, nonprofit corporation operating a parent participation nursery school". Neither bill was enacted into law.

care and "educational benefits" to preschool children. There are few, if any, child care or day care centers that provide custodial care only. Some form of organized activity, training and instruction for such preschool children is necessary, even if not demanded by the parents. Otherwise bedlam would reign in the centers.

The construction of Code § 58-441.6 (t) for which the Department of Taxation contends is a reasonable one. And we have held that the construction of a statute by a state official charged with its administration is entitled to great weight. *Commonwealth* v. *Research Analysis, supra; Commonwealth* v. *Radiator Corp.*, 202 Va. 13, 19, 116 S. E. 2d 44, 48 (1960); *Miller* v. *Commonwealth*, 180 Va. 36, 42, 21 S. E. 2d 721, 723 (1942). We agree with the State Tax Commissioner that it was not the intent of the General Assembly in enacting Code § 58-441.6 (t) for the exemption therein provided to apply to organizations operating preschool centers and nurseries. We hold that the proper level of education at which to commence the exemption is that accepted as the first level in the public school system and that Progressive does not qualify for the exemption.

If we held that the determination of whether a preschool center such as Progressive is sufficiently educational to qualify as an "other institution of learning" is a factual determination we would place upon the Department of Taxation an impossible administrative burden. There are innumerable organizations throughout Virginia which operate preschool programs. They are variously termed by such names as headstart, day care, child care, child development, prekindergarten and nursery. Some are small and informal operations with few teachers. Others are more sophisticated and elaborate. The Department would have to make a factual finding in every case as to the structure of the organization and the educational value of its program in order to determine the organization's entitlement to a sales tax exemption.

The decree of the lower court is reversed, and final decree will be entered for the Commonwealth of Virginia, Department of Taxation.

*Reversed and final decree.*