# Richmond

## CITY OF PORTSMOUTH v. PORTSMOUTH CATHOLIC ELEMENTARY SCHOOL P.T.A.

September 2, 1976.

Record No. 750999.

Present, All the Justices.

*Gordon B. Tayloe, Jr., City Attorney (James T. Martin, Assistant City Attorney,* on brief), for plaintiff in error.

*Dean W. Sword, Jr.,* for defendant in error.

Per Curiam.

The question presented by this appeal is the right of the City of Portsmouth (City) to levy an amusement admissions tax upon the charges paid by players who participated in bingo games operated by Portsmouth Catholic Elementary School P.T.A. (P.T.A.). The trial court, in a proceeding instituted under Code § 58-1145, held the tax assessment erroneous and directed the City to refund $1848.77 theretofore paid to it by P.T.A. We granted a writ of error.

The facts are not in dispute. P.T.A. is an unincorporated, non-profit organization holding a permit under Code § 18.1-340 (now Code § 18.2-335) from the City to conduct bingo games. All profits

from operation of the bingo games are used by P.T.A. for the benefit of the Portsmouth Catholic School System.

The City Charter permits it ". . . to levy and collect taxes for admission to or other charge for any public amusement [or] entertainment . . . which taxes may be added to and collected with the price of such admission or other charge . . ." Acts, 1970, c.471 § 2.02. After Code § 18.1-340 was amended in 1973 to authorize local governing bodies to permit bingo games and raffles to be conducted by certain organizations, Acts, 1973, c.463, the City Council amended its Amusement Admissions Tax, Code of the City of Portsmouth, 1973, § 35-134 *et seq.*, to levy a tax on the charges paid by those engaged in playing bingo. While the tax was levied on the player, the operator of the game was required to collect the tax and pay it over to the City. If he failed to do so, the operator was liable to the City for the tax.

While P.T.A. claims that Code § 58-404.1[1] ". . . expressly prohibit[s] any locality from taxing admissions [to any event] conducted for charitable purposes", we find this argument to be without merit. This is a classification statute which permits the taxing authority to treat each of two classes of admissions separately "for purposes of taxation." Nothing in the statute, however, prohibits the City from imposing a tax on admissions of either class or both classes or from imposing different rates on the different classes.

P.T.A. next points to Code §§ 58-270, -271 and -273 which provide an exemption from license taxes of motion picture shows, theatrical performances and the exhibition of trained horses for benevolent, charitable or educational purposes. P.T.A. also points out that qualifying nonprofit organizations are exempt from payment of income taxes under Code § 58-151.03(a) and from payment of personal property taxes under Code § 58-12(4). This, it argues, demonstrates that it is ". . . the clear policy of the legislature and constitution [to exempt] charitable organizations from paying the admission tax on its events . . ."

---

1.
Code § 58-404.1 provides:

In accordance with the provisions of Article X, § 1, of the Constitution of Virginia, events to which admission is charged shall be divided into the following classes for purposes of taxation:

(a) Admissions charged for attendance at any event, the gross receipts of which go wholly to charitable purpose or purposes.

(b) All other admissions.

This argument falls of its own weight. Prior to adoption of the 1971 Constitution, § 168 of the 1902 Constitution, providing for exemptions from taxation, had been liberally interpreted. Report of the Committee on Constitutional Revision 306 (1969). Article X § 6(f) of the 1971 Constitution, however, reversed the former rule and requires a general rule of strict construction of exemptions from taxation. *Dept. Taxation* v. *Prog. Com. Club*, 215 Va. 732, 735, 213 S.E.2d 759, 761 (1975). Nowhere in Article X of the 1971 Constitution or in the tax statutes (Code, Title 58) has P.T.A. pointed out, and our own research fails to disclose, an exemption from taxation on admission charges paid to a nonprofit, benevolent, charitable or educational organization. Under the rule of strict construction, therefore, we deny P.T.A.'s claim of exemption.

The judgment of the trial court is reversed and a final order will be entered here denying the tax relief sought by P.T.A.

*Reversed and final order.*