## CIRCUIT COURT OF ARLINGTON COUNTY

Close Up Foundation

v.

Arlington County
Board of Supervisors

July 29, 1996

Case No. (Law) 27525

BY JUDGE BENJAMIN N. A. KENDRICK

This matter is before this court on Petitioner's *Application for Relief from Erroneous Assessment of Personal Property*, as amended to exempt its personal property from tax assessments by the Commissioner of Revenue of Arlington County for the years 1984, 1985, 1986, 1987, 1988, 1989, 1990, and 1991. This Court has jurisdiction to hear this matter pursuant to § 58.1-3984, *et seq.* of the Code of Virginia (1950, as amended).

Evidence was presented over two days of hearings. Briefs have been filed, argument has been heard, and the case is mature for a decision. The narrow question before the court is whether or not the Close Up Foundation qualifies for an exemption from property taxation as an educational institution, a charitable foundation, or a charitable organization under §§ 58.1-3606 and 58.1-3618 of the Code of Virginia and Article X, § 6(a), of the Constitution of Virginia.

## I. *Findings of Fact*

The following facts are established in the record in this case.

Close Up Foundation ("Close Up") is a non-profit District of Columbia corporation incorporated on June 4, 1971. Close Up first moved its office to Arlington, Virginia, on September 1, 1981, and remained until 1991. In 1991 Close Up became and continues to be headquartered in Alexandria, Virginia. Close Up's predecessor, Close Up Forum, conducted at least two programs in Virginia prior to July 1, 1971.

Close Up is recognized as a non-profit 501(c)(3) organization exempt from Federal income taxation. Close Up, as stated in its by-laws, is:

> organized and shall be operated exclusively for charitable, edu-
> cational, and literary purposes, as those purposes pertain to fur-
> thering the meaningful participation of students and persons of
> all ages in the activities of government, with particular emphasis
> on the Federal Government in Washington, D.C.

The primary activity of Close Up is to conduct series of week-long educational programs for high school students and their teachers, enabling them to learn about the government of the United States.

Through June 30, 1991, Close Up has brought more than 310,000 students and teachers from every state and territory of the United States, and many foreign countries, to participate in these week-long educational programs. Under the supervision of specially trained instructional staff, participants attend a series of lectures, seminars, and workshops that include presentation by government officials, journalists, lobbyists, and experts on current issues and processes of government. Generally there is one Close Up instructor for each eighteen to twenty participants. Close Up does not have a permanent faculty to teach these programs and the large majority of these presenters are not Close Up employees.

Each Close Up participant attends twelve to fifteen seminars during the week, most of which are conducted at residence hotels, in federal buildings, on Capitol Hill, and at universities and other area locations. Close Up Foundation does not have a campus or maintain any permanent educational facilities and does not own any classroom space. Close Up conducts planned workshops and seminars to provide teachers with facts and information to deepen their understanding of the U.S. Government workings. These courses also provide the teachers with methodologies and techniques to use in their classrooms when teaching civics.

Close Up engages in the creation of nationwide local community committees, which sponsor programs coinciding with activities in Washington, D.C., to maximize students' learning experiences. Close Up develops civic work books and text books which enhance the Washington, D.C., experience but which can also be used by schools and educational institutions. Close Up has produced over 1,000 public affairs programs for broadcast on CNN since 1979. They also produce instructional and documentary videos for use in high schools.

Close Up developed and runs a national Citizen Bee, which encourages high school students to increase their knowledge of U.S. government, history, geography, economics, and current events. In 1990/1991 nearly 140,000 participants took part in the Citizen Bee. Close Up also created the Civic Achievement Award Program which encourages students to participate in a learning project, a research project and a community service project. Over one million students took part in this program in 1990/1991.

Close Up runs the Allen J. Ellender Fellowship program to ensure participation of lower income students in its programs. This awards monetary grants for teachers and students so that they can participate in the Washington, D.C., program.

Close Up does not provide any significant amount of funding to colleges, schools, or other charities. Schools nationwide, including both high schools and colleges, have recognized the educational merits of the Close Up Foundation. Many schools and universities provide credit towards class work and graduation for participation in Close Up's programs. Many schools incorporate the Close Up program into their classroom instruction and activities and recognize Close Up's educational activities as co-curricular academic activities.

There was testimony at trial that:

> the week [students] spend on the [Close Up] program is so valuable that when these students come back it is very easy to integrate both the knowledge and skills gained on the program into the rest of the history and government courses they are taking.

Trial Tr. (11/27/91) at 137-138.

Close Up does not offer any academic degree. Close Up does not graduate students on the basis of demonstrated academic achievement; however, it does accept its students on that basis. Close Up is not accredited as a school by any review board or accrediting association. Nor are its instruc-

tors required to be certified as teachers by state boards of education or other certifying agencies.

The Close Up property that is the subject of this case was not shown to have been owned by Close Up or its predecessor "Close Up, A Forum on the Involvement of Youth in the System," prior to July 1, 1971. The Close Up property that is the subject of this case was not shown to have been in existence prior to July 1, 1971.

## II. *Discussion*

The petitioner in this case seeks to set aside a tax assessment based on various tax exemptions found in the Constitution of Virginia and the Code of Virginia. Perhaps the most critical issue surrounding Close Up's entitlement to these exemptions is whether the tax exemption is construed under a rule of "strict statutory construction" or "liberal statutory construction." It is to this issue that the Court turns first.

### A. *Strict or Liberal Construction*

Taxation of property in Virginia is the rule, not the exception. *Commonwealth v. Wellmore Coal*, 228 Va. 149, 153 (1984). This Court will generally strictly construe any statutory or constitutional exemption against the taxpayer. *Department of Taxation v. Progressive Community Club*, 215 Va. 732, 736 (1975). Indeed, Article X, § 6(f), of the Constitution of Virginia mandates that:

> Exemptions of property from taxation as established or authorized hereby shall be strictly construed . . . .

The Supreme Court of Virginia noted that under the Constitution of Virginia:

> [s]tatutes granting tax exemptions are construed strictly against the taxpayer. When a tax statute is capable of two constructions, one granting an exemption and the other not granting it, courts adopt the construction which denies the exemption.

*Progressive Community Club*, 215 Va. at 736, *quoting Commonwealth v. Community Motor Bus*, 214 Va. 155, 157 (1973). The Supreme Court explained strict construction of exemptions by stating that:

> [i]f any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State. In other words, "to doubt an exemption is to deny it."

*Progressive Community Club*, 215 Va. at 736 (citation omitted). Accordingly, this court will view any claimed exemptions by Close Up under a strict construction of the statute granting the exemption.

However, Close Up argues that they are excused from this general rule of strict construction based on a grandfather clause found in the 1971 Constitution. The grandfather clause allows this court to liberally construe exemptions for property in existence prior to the enactment of the July 1, 1971, Constitutional revisions:

> all property exempt from taxation on the effective date of this section shall continue to be exempt until otherwise provided by the General Assembly as herein set forth.

Article X, § 6(f), Constitution of Virginia. In turn, this grandfather provision is incorporated into Va. Code § 58.1-3606(B):

> property, belonging in one of the classes . . . which was exempt from taxation on July 1, 1971, shall continue to be exempt from taxation under the rules of statutory construction applicable to exempt property prior to such date.

First, application of the grandfather clause presupposes that the organization was in existence prior to July 1, 1971. *See Westminster-Canterbury v. City of Virginia Beach*, 238 Va. 493, 501 (1989). Second, the grandfather clause limits the use of liberal rules of construction to specific pieces of property that existed prior to July 1, 1971, which were owned by the organization prior to July 1, 1971. *Children, Inc. v. City of Richmond*, 251 Va. 62, 67 (1996); *See also Manassas Lodge v. Prince William*, 218 Va. 220 (1977).

Close Up meets none of the requirements for an application of liberal rules of construction under the grandfather clause. There was no credible evidence in the record which suggested that the Close Up Foundation existed in Virginia prior to July 1, 1971, especially given Close Up's lease obligations in Washington, D.C., during 1971. This Court finds that Close Up Foundation was founded on June 4, 1971, in the District of Columbia and did not operate any programs in Virginia prior to July 1, 1971. Any programs similar to those conducted by Close Up were conducted by another organization called "Close Up, A Forum on the Involvement of Youth in the System."

Assuming *arguendo* that Close Up did exist prior to July 1, 1971, and conducted programs in Arlington, there was no showing that the property

subject to the tax assessment in this case existed or was owned by Close Up prior to July 1, 1971. While Close Up Foundation may have had *property* that was exempt from taxation under the earlier constitution, this court finds that there is no credible evidence that any of that *property* is the property which is the subject of the instant application to set aside an erroneous tax assessment. Indeed, counsel for Close Up stated during trial that:

> We intend to present no evidence that any of the property that is listed as being taxed in '84, '85 and subsequent years was actually owned by the Forum [or its successor Close Up] in the spring of 1971. We made that perfectly clear.

Trial Tr. (11/27/91) at 96-97. The grandfather clause only applies to property owned by an organization prior to July 1, 1971, not all property currently owned by an organization in existence prior to July 1, 1971. As a threshold issue, Close Up was required to show that it owned the property prior to July 1, 1971. Failing to do this Close Up's claim for tax exemptions cannot be construed under the liberal rules of construction allowed by the grandfather clause. Accordingly, this court will strictly interpret any exemptions which Close Up claims.

Having dismissed Close Up's grandfather clause argument, this court, applying the rules of strict construction to the claimed exemptions, now turns to those exemptions.

B. *"Charitable Foundation" Exemption*

Close Up first claims an exemption from taxation under § 58.1-3618 of the Code of Virginia (1950, as amended) which, when read together with § 58.1-3609, provides an exemption for "incorporated charitable foundations conducted not for profit, the total income from which is used exclusively for . . . educational purposes . . . ."

The definition of "foundation" is:

> [a] privately endowed *non-operating* charity that provides funds to other charities or makes grants directly to individuals for scientific research, or educational or other purposes beneficial to the community.

Fisch, Freed, and Schachter, *Charities and Charitable Foundations,* § 36, p. 36 (1976) (emphasis added). The treatise from which this definition was drawn indicated that this definition is "the lay meaning of the term which is commonly used to denominate a foundation." *Id.* Accordingly, under a

plain reading of a statute, the court will apply the common meaning of a word to determine if Close Up meets that definition.

The record in this case shows that the Close Up Foundation was an operating charity whose primary purpose was not to provide operating funds to other organizations, but rather to support itself in its many educational activities. Close Up does not make grants to other charities, colleges, or schools. The fellowships offered by Close Up provide scholarships to disadvantaged people; however, these funds are provided to Close Up through matching donations from the Federal Government and in turn these funds are paid back to Close Up for the participant's participation in Close Up programming. The primary purpose of Close Up Foundation is to operate its own revenue producing programs rather than to provide funds to other charities or make grants to individuals. Close Up is not a "privately endowed *non-operating* charity that provides funds to other charities or makes grants directly to individuals . . ." and therefore this court finds that Close Up is not a "foundation" within the plain meaning of the statute when a strict construction is applied.

The Court also looks at the structure of the statute itself to determine whether of not the legislative intent of the word "foundation" was to include Close Up. The statute section that Close Up relies upon for the "foundation" exemption also grants an exemption for "alumni associations operated exclusively . . . for the benefit of colleges and other institutions of learning . . . ." This wording, preceding the term foundation seems to suggest that the legislature intended "foundation" as encompassing only those organizations which provide funds for the operation of other organizations. Close Up does not fall under this category of organizations.

"Exemption from taxation is the exception, and if there is any doubt, the doubt is resolved against the one claiming exemption." *Wellmore Coal,* 228 Va. at 153 (1984) (citation omitted). It is this Court's opinion that, under a strict interpretation of the word "foundation," Close Up does not qualify as a foundation for the purposes contemplated in the statute.

## C. *"Institution of Learning" Exemption*

Next the court turns to Close Up's second claim that it is exempt from taxation as an "institution of learning." Article 2 of § 58.1-3606(A) of the

Code of Virginia (1950, as amended) provides a tax exemption based on the Constitution of Virginia[1]:

> *Property Exempt from Taxation by Classification* — A. Pursuant to the authority granted by Article X, Section 6(a)6, of the Constitution of Virginia to exempt property from taxation by classification, the following classes of real and personal property shall be exempt from taxation . . . .
>
> 4. Property owned by . . . incorporated colleges or other institutions of learning not conducted for profit. This paragraph shall apply only to property primarily used for literary, scientific or educational purposes or purposes incidental thereto . . . .

The crux of this argument is whether or not the Close Up Foundation is an "other institution of learning" and therefore is entitled to an exemption from property taxation. Arlington County argues that Close Up is not entitled to this exemption under a strict construction of the statute. Close Up argues that even under a strict construction of the stature, they are entitled to take advantage of the exemption. This Court is of the opinion that Arlington County argues the correct position.

The record establishes that Close Up Foundation provides substantial educational benefit to millions of students yearly. The issue then, is not whether Close Up provides educational value for those students, but whether or not it is a "college or other institution of learning." Close Up is clearly not a college, so the court only considers if Close Up falls within the meaning of "other institution of learning" as contemplated by § 58.1-3606(A)(2)(4).

When the language of a statute is plain and admits of no more than one meaning, the court must rely on the statute's plain meaning and not on the rules of statutory construction. *See generally VEPCO .v. Prince William Co.*, 226 Va. 382 (1983). However, when a statute contains a word giving rise to various interpretations of that word, then the statute is ambiguous. *Sunderland Stat. Const.* §§ 45.02 (5th ed.). That is the case here, where "other institution of learning" could be defined by well-informed individuals as a day care program, a high school, a college or university, or an

---

[1] Article X, § 6.a, of the Constitution of Virginia states, in pertinent part that "Except as otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes . . . . 4. Property owned by . . . Institutions of learning not conducted for profit, so long as such property is primarily used for . . . educational purposes or purposes incidental thereto . . . ."

organization such as Close Up. Not able to discern a plain or commonly accepted meaning of the phrase "other institution of learning," this Court must turn to the rules of statutory construction to aid it in determining the intent of the statute.

### i. *Noscitur a Sociis and Ejusdem Generis*

To interpret statutes, "the ultimate purpose of all rules of [statutory] construction is to ascertain the intention of the legislature . . . . All rules are subservient to that intent." *Board of Supvrs. v. King Land Corp.*, 238 Va. 97, 103 (1989) (citation omitted). One way to determine the intent of the legislature is to look at the phrase "other institutions of learning" under the two canons of construction *noscitur a sociis* and *ejusdem generis*. The Supreme Court of Virginia noted in *Sellers v. Bles*, 193 Va. 49, 56 (1956), that:

> [t]he maxim *Noscitur a sociis* is frequently discussed in connection with the maxim *Ejusdem generis* under these doctrines, where there are general word following particular and specific words, the general word must be confined to matters of the same kind as those specified.

(Citations omitted). It is clear from the case law and the argument surrounding the term "other institution of learning" the "institution of learning" is not a term of art, but a phrase that takes "its color and significance from its surroundings and must be interpreted and given the meaning indicated by its settings. It will be judged by the company it keeps." Id.

In the instant case, the general words "other institutions of learning" follow the specifically enumerated item "incorporated colleges." Applying the above canons of construction and a strict interpretation of the statute, this Court finds the phrase "other institutions of learning" as only encompassing those organizations similar to "incorporated colleges." An organization would not become an institution of learning simply by offering programs providing educational and intellectual benefit. *Progressive Community Club*, 732 Va. at 738.

To qualify for an exemption as an "institution of learning," the organization must, at a minimum, have a faculty, a student body of an age that is accepted as the first level in the public school system, and prescribed courses of study. Further, these requirements must be present in such a way as to give meaningful identity as an institution of learning.

With the discussion framed this way, the Court finds that Close Up does not fall under the term "institution of learning" for the combined following reasons (one factor in itself does not necessarily disqualify Close Up from the exemption). First, Close Up does not have a regular student body in the sense of a college. A college has a student body that generally stays fairly constant over a reasonable period of time, at least one semester which lasts over a period of five months or more. Close Up, on the other hand, provides instruction to its "students" for only one week, with some preparation and follow up instruction given by the student's regular teachers.

Second, Close Up does not provide a regular course of study. The American Heritage Dictionary defines "course" as "a complete body [or unit thereof] of prescribed studies constituting a curriculum and leading toward an advanced degree." *American Heritage Dictionary*, New College ed., Houghton Mifflin Co. (1982). While it is clear that Close Up provides an educational program, it does not provide a curriculum leading toward an advanced degree. Indeed, the program Close Up offers only *supplements* a participant's high school or college education as distinguished from *actually providing* a high school or college education. Moreover, while the students are given a certificate of program completion, the participants in the program are not graded or otherwise critiqued for their participation, as is common with traditional colleges or universities. In fact, the only requirement for a certificate of program participation is attendance in the program during the week.

Third, Close Up does not have a campus, maintains no permanent educational facilities or classroom space.

Fourth, Close Up is not accredited as a school by any review board or accreditation association as is standard among colleges, universities, and public and private high schools nor are its instructors required to be certified as teachers.

Finally, by providing other functions such as fellowships, a citizen bee, television shows, and a civic achievement award, Close Up falls further outside the "college or institution of learning" rubric. While these activities may be devoted to the furtherance of education, they do so in a way unlike most college or college-like institutions.

Each of these factors alone does not defeat Close Up's claim for an exemption; however, when viewing all the factors in their totality, it appears Close Up is not sufficiently similar to a college to qualify as an "other institution of learning" under a strict construction of the term.

### ii. *Legislative Intent and the Rule of Strict Interpretation*

The court can also turn to actual legislative notes regarding the enactment of a statute to determine its meaning. The Supreme Court cited the Commission responsible for the 1971 revisions of the Constitution as acknowledging that a prime motive for the strict statutory construction requirement stemmed from the myriad organizations claiming them:

> Tax exemptions already are having serious effects on local finances, and widening the circle of exemptions would only magnify that problem.

*Progressive Community Club* at 735, *citing Report of the Commission on Constitutional Revision* (Jan. 1, 1969) at 305. Thus, a major legislative intent in requiring strict construction was to considerably narrow the tax exemptions to prevent myriad groups from claiming exemptions. The Supreme Court recognized this problem when it stated that:

> [i]f Progressive qualifies as an institution of learning, so would many less ambitious, and not as well-funded, nonprofit organizations designed to afford "educational benefits" to children.

*Id.* at 739. If this court were to hold that Close Up Foundation falls within the tax exemption, this would open the door to numerous other groups similar to Close Up Foundation. It would be arguable, for instance, that a week-long computer summer camp requiring prerequisite school course work for admission would be eligible for the "other institution of learning" exemption. This seems to this Court to be contrary to the intent of the legislature.

### iii. *Case Law Distinguished*

Close Up cites the case of *Richmond v. Day Nursery Association,* 207 Va. 561 (1966), to bolster its argument that it is eligible for an exemption as an "institution of learning." This case, is easily distinguishable from the instant case in that it was decided prior to the 1971 Constitutional revisions. Prior to 1971, all tax exemption questions dealing with charitable organizations were decided under rules of liberal interpretation. Thus, *Day Nursery* provides little guidance in the instant case.

Close Up also cited *Progressive Community Club* to support its position. *Progressive Community Club* was decided after the strict interpretation rules went into effect in 1971 and provides this court with some guidance. In *Progressive Community Club*, the Supreme Court of Virginia held that

"the proper level of education at which to commence the exemption is that accepted as the first level in the public school system . . . ." *Progressive Community Club*, 215 Va. at 739. Petitioner argues that since Close Up primarily instructs high schoolers and beyond, they qualify under this "bright line" test as an "higher institution of learning."

While the age of students in a program may be a bright line threshold age for qualification as an institution of education, this is not the only defining factor of an institution of education. It would strain construction of the statute to hold that any organization which presented an educational purpose for elementary schoolers and beyond — no matter how it was organized — qualified for the exemption. The Court rejects Close Up's argument, which echoes of the myriad organizational exemption problem discussed earlier.

### iv. *Commissioner Entitled to Weight*

The Commissioner of Revenue ruled in June 1986 that Close Up was not exempt from local property taxes as an "other institute of learning." The Supreme Court has held that "the construction of a statute by a state official charged with its administration is entitled to great weight." *Progressive Community Club*, 215 Va. 732 at 739. This Court finds that the construction of "institution of learning" for which the Arlington County Commissioner of Revenue contends is a reasonable one. The Court agrees with the Commissioner of Revenue's decision not to exempt Close Up from personal property taxation.

### D. *Charitable Organization Exemption*

Close Up's third claim for property tax exemption is found in § 58.1-3606(A)(7) of the Code of Virginia (1950, as amended), which exempts all property belonging to a charitable organization which is used exclusively for charitable purposes.[2]

This Court notes that this argument was not raised by counsel for Close Up in their initial or supplemental pleadings or a trial. In fact, Close Up first advanced this argument in its second post-trial submission.

---

[2] Section 58.1-3606(A)(7) of the Code of Virginia (1950, as amended) reads, in pertinent part: "Buildings with the land they actually occupy, and the furniture and furnishings therein belonging to any benevolent or charitable organization and used by it exclusively . . . meeting rooms."

Case law is replete with the idea that a court cannot grant relief on facts or upon a right which has not been pleaded and claimed. The rule is clearly stated in *Potts v. Mathieson Alkali Works*, 165 Va. 196, 207 (1935):

> No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed . . . . Pleadings are as essential as proof, the one being unavailing without the other . . . . The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence.

The petitioner's pleadings only reference two property tax exemptions: § 58.1-3606.4 of the Code of Virginia (1950, as amended), which exempts property owned by an "other institution of learning not conducted for profit" and § 58.1-3618 of the Code of Virginia (1950 as amended), which exempts property owned by "charitable foundations." *See Application for Relief from Erroneous Assessment of Personal Property Owned by the Close Up Foundation,* p. 3, ¶¶ 6 and 7. Nowhere in the petitioner's pleadings is there mention of § 58.1-3606(A)(7) of the Code of Virginia (1950, as amended). Thus, this Court does not consider this as a ground for granting relief.

## E. *Equal Protection*

This Court finds that the County Board of Arlington, by taxing the Close Up Foundation, has not denied Close Up equal protection. Close Up's equal protection argument is predicated on the notion that Close Up is an educational institution similar to Marymount College. Since this Court explicitly rejects that notion (*supra* § II.C), there is no denial of equal protection.

Moreover, there was no evidence in the record supporting the conclusion that Close Up was treated any differently than other comparable organizations.

## III. *Conclusion*

Under a liberal interpretation of the statutes in question, this court would undoubtedly find that Close Up is eligible for at least one of the claimed exemptions. Indeed, dicta by the Virginia Supreme Court in *Progressive Community Club,* suggests that the Virginia Supreme Court would find them eligible for an exemption as well. *Progressive Community Club,* 215 Va. at 738. However, given the rule of strict interpretation imposed by

the legislature surrounding this statute, this court must side with the Arlington County Board and uphold Arlington County's tax assessments.

For the foregoing reasons, the court finds that Close Up is not entitled to property tax exemptions for the property in question. The Petitioner's application for correction of property tax assessments for the years 1984, 1985, 1986, 1987, 1988, 1989, 1990, and 1991 is denied.