## CIRCUIT COURT OF THE CITY OF RICHMOND

Boehringer Ingelheim
Pharmaceuticals, Inc.

v.

Department of Taxation,
Commonwealth of Virginia

December 20, 1996

Case No. LA-825-1

By Judge T. J. Markow

This case is before the Court on an Application for Correction of Erroneous or Improper Tax Assessment, filed by Boehringer Ingelheim Pharmaceuticals, Inc. (Petitioner) pursuant to Va. Code Ann. § 58.1-1825, against the Commonwealth of Virginia's Department of Taxation (Department). At issue are use taxes levied and paid on prescription drug samples distributed by Petitioner to physicians for the years 1986 to 1992. The court has taken evidence and considered argument, both written and oral, from the parties, and now renders the following opinion.

### Facts

The facts on which this action is based have, in large part, been stipulated. Petitioner is a manufacturer of pharmaceutical products, including prescription and over-the-counter medications. As part of its business practice, Petitioner regularly packages some of its prescription medicines in smaller containers, labeled Professional Sample, while the rest of the production batch involved is packaged in larger quantities for distribution to pharmacies, hospitals, and other such approved recipients.

Petitioner's manufacturing facility is not within the Commonwealth. It does, however, send its samples across the border to its agents, called Detail Persons. The Detail Persons visit with doctors in Virginia to inform them about the products being manufactured by Petitioner. The Detail Persons, upon the written request and signature of the doctor, give samples of the medications to the doctors they visit. The doctors may then distribute the samples to their patients when prescribing that medication.

The Department conducted a sales and use tax audit of Petitioner for the period of September, 1986 through August, 1992. On October 19, 1992, the Department levied two tax assessments on Petitioner. The use taxes and interest charges levied by the Department in the two assessments totaled $85,138.57, of which, the amount of $34,341.67 is in dispute here. The Department assessed this amount on the alleged use made by Petitioner in sending samples to its Detail Persons. On November 5, 1995, Petitioner paid the full amount of the tax assessments.

This Court must now decide whether the use tax above described was erroneously assessed on the distribution of samples of prescription medication. Alternatively, Petitioner argues that the tax was improperly calculated.

### Standard of Review

In the protest of a tax assessment or collection, it is the "burden of the applicant . . . to show that the assessment or collection complained of is erroneous or otherwise improper." Va. Code Ann. § 58.1-1825.

Taxation of property is considered to be the rule and not the exception. *E.g., Department of Taxation v. Progressive Community Club of Washington County, Virginia, Inc.*, 215 Va. 732 (1975). Exemptions of property from taxation are to be strictly construed against the taxpayer. *See, e.g., id.* at 734; *Commonwealth v. Research Analysis Corp.*, 214 Va. 161 (1973). If a statute is susceptible of two constructions, one granting an exemption and one denying the exemption, courts will adopt the construction which denies the exemption. *Progressive Community Club*, 215 Va. at 736 (citing *Commonwealth v. Community Motor Bus Co.*, 214 Va. 155, 157 (1973).

Additionally, construction of a statute by a State official charged with its administration is entitled to great weight. *E.g., Commonwealth v. Research Analysis Corp.*, 214 Va. 161, 163 (1973). The Tax Commissioner is authorized to administer the tax laws. Va. Code Ann. § 58.1-202. Assessments of tax by the Department are deemed prima facie correct. Va. Code Ann. § 58.1-205(1).

*Analysis*

## Count I

The Department has long held that the withdrawal of samples from inventory and delivery to sales representatives or detail persons in Virginia for delivery to customers in Virginia constitutes a taxable use of the product. This is so because the Department considers those described events to be an example of the taxpayer exercising a right or power over the tangible personal property which constitutes a "use" as defined in § 58.1-602 of the Code.

During the hearing on this matter, there was argument as to whether this was a withdrawal from "inventory," and whether the company was making "use" of the product. However, both parties have agreed that Count I of this case turns not on whether this is a use at all, but rather on whether the practice of distributing samples to physicians at no cost is a use exempt from Virginia use tax pursuant to former Va. Code Ann. § 58.1-608(A)(7)(a) and its successor located at Va. Code Ann. § 58.1-609.7(1), as those statutory provisions existed during the relevant time period of the audit. The 1996 session of the General Assembly amended § 58.1-609.7(1) to exempt sample prescription drugs from the sales and use tax.

These code provisions provide an exemption from sales and use taxes for prescription drugs dispensed by or sold on prescriptions or work orders of licensed physicians, dentists, and certain other medical professionals. Certainly, under this provision, the sale of such medications by a pharmacy to its customers, upon a doctor's prescription, would be exempt from the tax. Further, the act by the doctor of dispensing samples is exempt. The Department has interpreted the exemption to apply to the sale of the medication by the manufacturer to the pharmacy or hospital, as well. The Department contends, however, that the manufacturer's distribution of samples to physicians is a taxable use not covered by the exemption. The Court agrees. The plain language of the exemption statute does not describe such a transaction.

The Petitioner argues that the only taxation of prescription pharmaceutical drugs not exempt under this provision are those which are subject to the use tax as specified in the last sentence of the provision. Specifically, Petitioner refers to actions taken by a veterinarian. The Petitioner contends that all other uses of such drugs are intended to be exempt.

The Court cannot agree. Since taxation of property is the rule, not the exception, the legislature is not charged with listing all of the uses which

are to be made and not covered by a given exception. Further, if the legislature had meant to exempt such transactions, it could have done so by clearly articulating its intention. The 1996 amendment which expressly exempted such transactions lends support to the Department's argument that the exemption claimed by Petitioner was not originally intended by the legislature. Petitioner's contention that the 1996 amendment was simply a clarification of existing law is not persuasive.

The pre-1996 exemption section of the code reads as follows:

> § 58.1-608. *Exclusions and exemptions.* — A. The tax imposed by this chapter or pursuant to the authority granted in §§ 58.1-605 and 58.1-606 shall not apply to the following . . . .
> 7. Medical-related exemptions:
> a. Medicines, drugs, hypodermic syringes, artificial eyes, contact lenses, eyeglasses and hearing aids dispensed by or sold on prescriptions or work orders of licensed physicians, dentists, optometrists, ophthalmologists, opticians, audiologists, hearing aid dealers and fitters and veterinarians; and controlled drugs purchased by a licensed physician for use in his professional practice. Any veterinarian dispensing or selling medicines or drugs on prescription shall be deemed to be the user or consumer of all such medicines and drugs.

The plain meaning of these words is that no taxable event occurs when a licensed individual (in this case, the physician), distributes prescription medication to patients. The Department has honored this statute in not imposing a tax on the physician or the patient for that distribution. However, this statute does not deal with the distribution from the manufacturer to the physician. Rather, it deals with medicines distributed by the physician and medicines sold by a pharmacy on the order of a physician. Neither event occurred here. As such, the use involved was not exempt from taxation.

*Count II*

Count II of the Petition asserts that the Department miscalculated the amount of tax imposed on these samples by utilizing petitioner's "cost" figures. Petitioner uses the "full absorption" method of accounting for its internal management. As such, cost includes many elements of overhead broken down and included in the per unit cost assigned to its products. The provision of the Virginia Code that imposes this tax, § 58.1-602, defines

the "cost price" as "the actual cost of an item or article of tangible personal property computed in the same manner as the sales price as defined in this section without any deductions therefrom on account of the cost of materials used, labor, or service costs, transportation charges, or any expenses whatsoever." "Sales price" means the "total amount for which the tangible personal property . . . is sold." Va. Code Ann. § 58.1-602.

In determining the "cost price," the Department used Petitioner's "full absorption" cost figures which include the deductions forbidden in § 58.1-602 of the Code. The full absorption accounting method does not measure "cost price" as required by the Code. The Department did not assess the tax according to the statutory definition. The Department is required to recalculate the taxes based on "cost price" as defined by law.