## Richmond

GOLDEN SKILLET CORPORATION v. COMMONWEALTH OF VIRGINIA.

October 8, 1973.

Record No. 8190.

Present, All the Justices.

*Thomas J. Markham (Aubrey R. Bowles, III; Bowles & Boyd,* on brief), for plaintiff in error.

*Sally Trapnell Warthen, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The question for decision in this case is whether equipment used in preparation and cooking of chicken for sale at retail is exempt from sales and use taxes under a statutory exemption for "machinery or tools . . . used directly in processing, manufacturing . . . or conversion of products for sale or resale." Code § 58-441.6.

The question arose when Golden Skillet Corporation (hereinafter, the taxpayer) was notified by the State Department of Taxation that an assessment had been made against the taxpayer for sales of "food cooking equipment." Thereafter, the taxpayer filed in the trial court an application for correction of the assessment on the ground it was erroneous. The trial court denied relief, and the taxpayer appeals.

The record shows that the assessment in question, covering the period September 1, 1966 to July 31, 1970, involved a tax in the amount of $4,138.31. The taxpayer, during the indicated period, was engaged in the business of selling franchises for the use of its name, "Golden Skillet," and, for its method of preparing and cooking chicken. The method of cooking was covered by patent.

The taxpayer's franchisees were engaged in the business of preparing and cooking chicken for sale at retail to "take-out" and "on-premises" customers. The taxpayer sold to its franchisees, among other things, equipment in the form of special cookers, also covered by the patent, parts and accessories therefor, and items used to cut, mix, or hold chicken or to bread and marinate chicken pieces. It was for the sale of this type equipment during the stated period that the disputed sales tax was assessed.

The taxpayer relies upon an exemption found in the first paragraph of Code § 58-441.6. That paragraph reads as follows:

"The terms 'sale at retail,' 'lease or rental,' 'distribution,' 'use,' 'storage' and 'consumption' shall not include industrial materials for future processing, manufacturing, refining, or conversion into articles of tangible personal property for resale where such industrial materials either enter into the production of or become a component part of the finished product; nor shall such terms include industrial materials that are coated upon or impregnated into the product at any stage of its processing, manufacture, refining, or conversion for resale; *nor shall such terms include machinery or tools or repair parts therefor or replacements thereof, fuel, power, energy, or supplies, used directly in processing, manufacturing, refining, mining or conversion of products for sale or resale*; nor shall such terms include materials, containers, labels, sacks, cans, boxes, drums or bags for future use for packaging tangible personal property for shipment or sale." (Emphasis added.)

The taxpayer contends that its customers, the franchisees, in preparing and cooking chicken for sale at retail, are engaged in processing, manufacturing, or conversion of products for sale or resale within the meaning of Code § 58-441.6. Therefore, the taxpayer concludes, the equipment sold by it and used by its customers in such processing, manufacturing, or conversion is included within the "machinery or tools" exemption set forth in the cited Code section.

The Attorney General contends, on the other hand, that the proper interpretation of the exemption paragraph in question, and the one consistently followed by the Department of Taxation, is that it should apply "only to true manufacturers or industries, and not to retailers such as restaurants." Under such an interpretation, the Attorney General says, the taxpayer's operation is not entitled to exemption. We agree with the Attorney General.

Code § 58-441.4, a part of the "Virginia Retail Sales and Use Tax Act," imposes a tax upon the sale or lease of tangible personal property. Code § 58-441.5 imposes a tax upon the use or consumption of such property. The taxes cover every such sale, lease, use, or consumption unless shown to be specifically exempted by law. Code § 58-441.17(a).

Here, the taxpayer claims to be exempt from the taxes assessed against it, relying upon an exemption contained in the first paragraph of Code § 58-441.6. In determining whether the taxpayer is entitled to that exemption, we follow a rule of strict construction. Exemption from taxation is the exception, and where there is any doubt, the doubt is resolved against the one claiming exemption. *Commonwealth v. Research Analysis Corporation*, 214 Va. 161, 198 S.E.2d 622 (1973).

Turning to the exemption paragraph in question, we find that it is a one-sentence paragraph, its several provisions separated only by semicolons. Its first two provisions exempt *industrial materials* which enter into the production of, become a component part of, or are coated upon or impregnated into, products processed, manufactured, refined, or converted for sale. Then, pausing only for a semicolon, the paragraph next exempts, among other things, machinery or tools used directly in processing, manufacturing, refining, mining, or conversion of products for sale or resale. Finally, the paragraph exempts certain types of containers and materials used in packaging and labeling personal property for shipment or sale.

As the taxpayer points out, the words "machinery or tools," appearing in the part of the paragraph upon which the taxpayer relies, are not preceded by the word "industrial" as is true in the case of the "materials" exemption in the two preceding provisions of the paragraph. But the paragraph must be interpreted as a whole and read as it is punctuated. When so interpreted and read, it is intended, in our opinion, to provide exemption for machinery and tools used in processing, manufacturing, refining, mining, or conversion of products for sale or resale only *in the industrial sense*.

Before leaving this phase of the question, we deem it necessary to answer an argument of the taxpayer. The argument is to the effect that the Department of Taxation has taken inconsistent positions in its interpretation of the exemption paragraph in question. The taxpayer says that the Department has interpreted, as we now interpret, the machinery or tools exemption to apply only to industrial operations. Yet, it is asserted, the Department has allowed an exemption for the containers sold by the taxpayer to the franchisees for packaging chicken ultimately sold to the retail consumer. This exemption, the taxpayer contends, could only have been allowed under the last provision of the paragraph in question.

The taxpayer does not explain what effect the alleged inconsistency in the Department's position should have upon the outcome of this case. Supposedly, if we agree that there is an inconsistency, we should say that the Department is estopped to interpret the machinery or tools exemption as applying only to industrial operations. We need not, however, deal in suppositions. We believe the taxpayer's argument is sufficiently answered by the Attorney General's assertion that the taxpayer's exemption for packaging materials comes not from the paragraph in question but from the fact that the materials were transferred to the franchisees for resale, a type transaction not subject to the sales and use tax. Code § 58-441.2(c).

Having determined that the exemption paragraph in question is applicable only to industrial operations, we must now decide the question whether the activity in which the taxpayer's franchisees are engaged constitutes processing, manufacturing, or conversion of products in the industrial sense. We think that to pose the question is to answer it. Common sense tells us that the process of preparing and frying chicken for sale at retail, notwithstanding the novelty of the patented method and cookers used by the franchisees, is not an industrial operation.

In reaching our determination, we have not overlooked our decision in *Caffee* v. *City of Portsmouth*, 203 Va. 928, 128 S.E.2d 421 (1962), cited by the taxpayer, in which we dealt with the question of the applicability to a bakery of a license tax upon retail merchants. In the course of holding that the bakery was subject to the tax upon the retail operations conducted in the showroom of its building, we stated that the work being done in the rear of the building, the baking of products, was manufacturing. It is this statement upon which the taxpayer in the present case relies. But there was no question in the

*Caffee* case whether the operation there involved was manufacturing in the industrial sense. So the case is not persuasive here.

Nor have we overlooked the various decisions from other jurisdictions cited by counsel. Those decisions, however, deal with differently-worded statutory provisions. Indeed, they show no definite trend among the states and are, even in some instances within the same jurisdiction, conflicting. They have been, therefore, of no aid in the task which is ultimately our own—the interpretation of the Virginia sales and use tax statutes.

For the reasons assigned, we hold that the taxpayer is not entitled to exemption from the taxes assessed against it. Accordingly, the judgment of the trial court will be affirmed.

*Affirmed.*