

# THE ATTORNEY GENERAL
## OF TEXAS

July 22, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. Building
Austin, Texas 78774

Opinion No. JM-756

Re: Whether gas and electricity used by a restaurant to prepare food for retail consumption is exempt from the sales and use tax, and related questions

Dear Mr. Bullock:

You ask several questions concerning the application of an exemption in the limited sales, excise, and use tax, chapter 151 of the Tax Code, to gas and electricity sold to restaurants as a source of energy to prepare food for consumption by customers. We set out your questions as follows:

> 1. Is the use of gas and electricity by a restaurant to prepare food for consumption by customers exempt?
>
> 2. If gas and electricity used by a restaurant to prepare food for consumption by customers is exempt, then is gas and electricity used for the following purposes exempt?
>
>> a. to store food in either a frozen or unfrozen condition prior to preparation?
>>
>> b. to store prepared food in an eatable condition?
>>
>> c. for lighting, heating, and cooling in the food preparation area?
>>
>> d. for hot water heaters, dishwashers, exhaust vents, garbage disposals and other support equipment?
>>
>> e. to maintain food at a desired serving temperature in the food preparation area?

        f. to maintain food at a desired serving temperature outside the food preparation area?

        g. to prepare food in a public area of the restaurant?

        h. to store food outside the restaurant's food preparation area?

        i. to freeze food for preservation purposes?

        3. May I require a utility usage study to show both exempt and nonexempt use before granting the exemption?

        4. If the answer to (3) is 'yes,' may I require the study to be done or reviewed by a registered engineer?

Your office is charged with adopting regulations deemed "essential to the speedy and proper assessment and collection of the revenues of the state." V.T.C.S. art. 4344. When the meaning of a statutory provision in the Tax Code is ambiguous, the construction developed by your department is entitled to weight. Calvert v. Kadane, 427 S.W.2d 605 (Tex. 1968). Your office has promulgated an extensive set of regulations defining and applying the limited sales, use, and excise tax to restaurants and other retail purveyors of prepared food. See 34 T.A.C. §§3.293 and 3.295. Because this office cannot adjudicate factual questions in the article 4399, V.T.C.S., opinion process, we cannot answer the questions requiring a point-by-point application of the law posed by you in question two of your request. The answers to these questions require the application of the special skills and knowledge of your office to complex fact situations the ultimate significance of which may not be discernible in even a well-framed hypothetical question.

We will review your general application of an exemption in the limited sales, use, and excise tax to gas and electricity used by restaurants to prepare food for consumption by customers. In the course of examining this issue, we must consider the general understanding of certain words applied in the statute.

The limited sales, use, and excise tax applies generally to "sales"; a "sale" includes "the furnishing, preparation, or service of food, meals, or drinks" done or performed for consideration (Emphasis added). Tax Code §151.005. Your concern, however, is not with the sale of food but with the sale of gas and electricity to businesses that prepare food for sale.

Sales of gas and electricity are exempted from the limited sales, excise, and use tax, except when sold for "commercial use." Tax Code §151.317. "Commercial use" means

> use by a person engaged in selling, warehousing, or distributing a commodity or a professional or personal service, but does not include a person engaged in:
>
> (A) <u>processing tangible personal property for sale as tangible personal property</u>. (Emphasis added).

Tax Code §151.317(c)(2).[1]

We note that while the statute exempts gas and electricity sold for "processing," because processing is specifically listed as a noncommercial use, your rules apparently interpret the statutory command to include both "processing" and "manufacturing."

> The tax imposed by Texas Tax Code chapter 151 must be collected on the sale of natural gas or electricity for commercial use. <u>The sale of natural gas . . . for use directly in manufacturing, processing, or for other noncommercial uses is exempt.</u> (Emphasis added).

34 T.A.C. §3.295(c).

The Tax Code contains definitions neither of "processing" nor of "manufacturing." You define these terms in connection with your rules for administering the exemption as follows:

> <u>Manufacturing</u> -- Every operation commencing with the first production stage and ending with the completion of production. The 'first production stage' means the first act of production, and it does not include acts in preparation for production. For example, a manufacturer gathering or arranging raw material or inventory is preparing for production. For the purposes of this section, direct use of natural gas or

---

1. "Tangible personal property" is "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner." Tax Code §151.009.

electricity in manufacturing will hereafter be referred to as 'noncommercial use.'

. . . .

Processing -- Includes an operation or a series of operations, the object of which is to create, produce, modify, or to change the characteristics of an article of tangible personal property. The repair of tangible personal property by restoring it to its original condition is not considered processing of that property. The property being processed may belong either to the processor or the customer, the only tests being whether the property is 'processed' and whether it will ultimately be sold. The mere packing, unpacking, or shelving of a product to be sold will not be considered processing of that product. Direct use of natural gas or electricity in processing will be referred to as 'noncommercial use.'

34 T.A.C. §3.295(a)(3), (5). Your rationale for maintaining separate definitions for "processing" and "manufacturing" is unclear, since the statute only refers to "processing."

You relate that "[f]or many years we have considered restaurants as engaging in both processing and commercial activities, processing when the food is prepared and commercial when it is sold." In order to arrive at a workable application of the Tax Code to the situation of a particular restaurant-taxpayer, you apply a "predominant use test" when a taxpayer purchases gas or electricity through a single metering device for both exempt and nonexempt uses. See 34 T.A.C. §3.295(d). See generally Houston Natural Gas Corporation v. Southwestern Apparel, Inc., 558 S.W.2d 950 (Tex. Civ. App. - Austin 1977, writ dism'd); Colonial Cafeteria-Arlington v. Bullock, 587 S.W.2d 211 (Tex. Civ. App. - Beaumont 1979, no writ).

Our review of your long-standing definition of "processing" in the context of restaurants preparing food for sale to customers must begin in 1961, when the limited sales, use, and excise tax was first adopted in its present form. The exemption now embodied in section 151.317 originally read:

Certain Utility Service Exempt. There are exempted from the taxes imposed by this Chapter the sale, production, distribution, lease or rental of and the storage, use or other consumption in this State of gas and electricity when used in industrial, manufacturing, mining,

> agricultural, dairy or poultry operations or
> pumping water for irrigation or for electrical
> processes such as electroplating and electrolysis.

Tex. Tax.-Gen. Ann. art. 20.40(Q); see Acts 1961, 57th Leg., 1st C.S.,
ch. 24, at 71, 86. In 1962, the legislature directed the Texas
Commission on State and Local Tax Policy to make a comprehensive study
of the limited sales, excise, and use tax. Acts 1962, 57th Leg., 3d
C.S., H. Con. Res. 5, at 226. The commission reached the following
conclusions about article 20.04(Q):

> Few provisions of the Limited Sales Tax statute
> have proved to be as difficult to interpret as
> Art. 20.04(Q) which establishes an exemption for
> gas and electric utility services when sold for
> 'industrial, manufacturing, mining' and agricul-
> tural use. The statute is certainly clear that
> agricultural usage and certain electrical
> processes are exempt. It is also clear that
> residential usage is taxable. The problem
> revolves around the meaning of the terms 'indus-
> trial,' 'manufacturing' and 'mining.' Already
> there are two lawsuits seeking clarification of
> these terms and the State Comptroller has joined
> with taxpayers in requesting this Commission to
> develop clarifying language.
>
> The Commission has attempted to determine what
> the Legislature probably intended in passing this
> particular provision. It is the Commission's
> considered judgment that the intent was to exempt
> manufacturing and mining as those terms are
> commonly used. In other words, the Commission
> believes that the term 'manufacturing' was
> intended to embrace industrial operations that
> might be more precisely termed 'processing' or
> 'fabricating' or 'assembling'. . . .
>
> The Commission also believes that the Legisla-
> ture intended all other forms of commercial usage
> to be taxable. This would include retail and
> wholesale trade, professional and personal
> services, amusements, hotels, office buildings,
> etc. (Emphasis added).

Texas Commission on State and Local Tax Policy, Proposed Changes in
the Texas Limited Sales, Excise, and Use Tax Law (1962) at 20. The
commission issued the following recommendation:

## Recommendation Twelve

. . . .

> B. It is recommended that the Limited Sales Tax statute <u>be amended to make it clear that gas and electric utility service is exempt when sold for use in manufacturing, mining and agriculture as those terms are generally understood and used and that all other business and professional use. . . is taxable.</u>  (Emphasis added).

<u>Id.</u> at 21.

Specific statutory language to enact legislation reflecting the recommendation was proposed by the commission. The proposed clarification was adopted without comment or change by the legislature; that language is now in article 151.317 of the Tax Code. See <u>id.</u> at 56-57; Acts 1963, 58th Leg., ch. 138, at 371, 386-87.

We think that it is important to emphasize that the Tax Commission recommendations underlying its proposal to the legislature to adopt the language now in article 151.317 stressed the need to apply the exemption to situations "generally understood" as manufacturing; the Tax Commission chose "processing" as an appropriate term to express the legislature's intent in exempting manufacturing as "generally understood." <u>See</u> Recommendation 12 of the Tax Commission, quoted in part above. In the absence of a definition in a statute for a term, the term is to be given its ordinary meaning, given the context in which it is used. <u>Big H Auto Auction, Inc. v. Saenz Motors</u>, 665 S.W.2d 756, 758 (Tex. 1984).

It is appropriate for you to continue to use your definition of "processing," so long as you can justify your definition as representing the "generally understood" meaning of "manufacturing" in the context of processing by restaurants to prepare food for consumption by customers. Although you do not provide us with the rationale for your long-standing administrative practice of including some of the activities of restaurants within the meaning of "processing," if that term is generally understood to mean "manufacturing," your definitions are unlikely to be disturbed. <u>See</u> <u>Calvert v. Kadane, supra</u>; <u>Brown Express, Inc v. Railroad Commission</u>, 415 S.W.2d 394 (Tex. 1967). <u>See also</u> <u>Ziperstein v. Tax Commissioner</u>, 423 A.2d 129 (Conn. 1979) (trial court's finding that restaurant was "generally recognized" as a "manufacturer" pursuant to a sales tax exemption scheme was significantly supported by the fact that authorities perceived restaurant to be a manufacturer by granting it a "manufacturers" license).

Several, if not most, of the several states have considered the meaning of "processing" and "manufacturing" in the setting of taxation schemes which employ language both similar to and different from that used in the Tax Code. See generally Annot., "Items or materials exempt for use tax as used in manufacturing, processing, or the like," 30 A.L.R. 2d 1439 (1953). See also Annot., "What constitutes manufacturing and who is a manufacturer under Tax Laws," 30 A.L.R. 3d 7 (1970). Almost all of the cases which we have examined seem to consider that processing essentially connotes the transformation of one form of tangible personal property into a finished form of tangible personal property ready for sale. Iowa Auto Dealers Ass'n v. Iowa Department of Revenue, 301 N.W.2d 760 (Ia. 1981) ("Processing essentially connotes the transformation of raw material into a finished product."); State v. Four State States Drilling Co., 177 So.2d 828 (Ala. 1965) (processing is "to prepare for the market [or] to convert into marketable form"); Commonwealth Department of Taxation v. Orange-Madison Cooperative Farm Service, 261 S.E.2d 532 (Va. 1980) (mixing of components, useful in themselves or in final product is "processing"), citing inter alia, Richmond v. Dairy Co., 157 S.E.728 (Va. 1931) (pasteurization of milk is a "process").

Some cases conclude that the preparation of food for immediate consumption by a restaurant is not "processing" or "manufacturing," as those terms are "generally understood." In Golden Skillet Corp. v. Commonwealth, 199 S.E.2d 511 (Va. 1973), the Virginia Supreme Court decided that the following sales and use tax exemption was unavailable to a restaurant:

> The terms 'sale at retail,' 'lease or rental,' 'distribution,' 'use,' 'storage' and 'consumption' shall not . . . include machinery or tools or repair parts therefor or replacements thereof, fuel, power, energy, or supplies, used directly in processing, manufacturing, refining, mining or conversion of products for sale or resale. . . .
> (Emphasis in original).

Id. at 513, quoting Va. Code §58-441.6. The Virginia court concluded that the exemption only applied to processing, manufacturing, or conversion of products for sale or resale "in an industrial sense," because "[c]ommon sense tells us that the process of preparing and frying chicken for sale at retail . . . is not an industrial operation." Id. at 514.

In McDonald's Corporation v. Oklahoma Tax Commission, 563 P.2d 635 (Okla. 1977), the following sales tax exemption provision was interpreted not to apply to restaurant operations:

> There is hereby specifically exempted from the
> tax levied by this Article the gross receipts or
> gross proceeds derived from the:
>
> . . . .
>
> (p) Sale of machinery and equipment purchased
> and used by persons establishing new manufacturing
> or processing plants in Oklahoma, and machinery
> and equipment purchased and used by persons in the
> operation of manufacturing plants already esta-
> blished in Oklahoma; provided, this exemption
> shall not apply unless such machinery and equip-
> ment is incorporated into, and is directly used
> in, the process of manufacturing property subject
> to taxation under this Article.  The term 'manu-
> facturing plants' shall mean those establishments
> primarily engaged in manufacturing or processing
> operations, and generally recognized as such.
> (Emphasis in original).

Id. at 636, quoting 68 Okla. Stat. 1971, §1305.  The Oklahoma court
concluded that the preparation or cooking of food is not "generally
recognized" as "manufacturing" or "processing." (Emphasis added.)
Id. at 638.

In Roberts v. Bowers, 162 N.E.2d 858 (1959), the Supreme Court of
Ohio found that a restauranteur was not a manufacturer and that
personal property used in preparation of food for retail was not
"manufacturing" equipment entitled to be listed at fifty percent of
its value for personal property taxation purposes.  The court
distinguished between a manufacturer and a merchant, stating that a
merchant, or dealer, sells to earn a profit, and a manufacturer sells
to make a profit already earned:

> Sale of materials already manufactured in order to
> make a profit already earned differs greatly from
> sale at retail of foods cooked primarily at the
> time and for purpose of sale in a retail food-
> service business.

Id. at 861.

The Virginia Supreme Court deduces a common theme from all of the
restaurant-as-processor cases:  processing alone by a restaurant is
ancillary to the service provided by the restaurant; hence a
restaurant is not a processor or a manufacturer as those terms are
"commonly understood."  Commonwealth Department of Taxation v.
Orange-Madison Cooperative Farm Service, 261 S.E.2d 532, 534 (Va.
1980).

On the other hand, in Zipperstein v. Tax Commissioner, 423 A.2d 129 (Conn. 1979), the Connecticut Supreme Court in the course of examining the application of a sales tax exemption granted for the sale of electricity to "an industrial plant" engaged in the process of manufacturing tangible personal property for sale "and generally recognized as such," supported an application of the exemption to food production operations of a restaurant. The court found that there was sufficient evidence produced at trial to support a finding that a fast-food restaurant was "generally recognized" as an industrial plant, in part because the state itself had perceived it to be an industrial plant by granting the required license for that category of establishment. The court intimated that restaurants are generally recognized as manufacturers. Id. at 131. See also Burger King, Inc. v. State Tax Commission, 407 N.Y.S. 2d 957 (1978).

We conclude on a cautionary note. The Supreme Court of Virginia in the Golden Skillet case, supra, completed a survey of cases applying sales tax exemptions to restaurants as "processors" or "manufacturers" by noting that the decisions show "no definite trend among the states and are, even in some instances within the same jurisdiction, conflicting." 199 S.E.2d at 514. Because our task is, as is yours, to interpret the Texas limited sales, use, and excise tax statute, we are not prepared to rely solely on the decisions of other states. Each of the reported decisions deals with differently-worded statutes, and legislative policies underlying the statutory language may vary. We think it best, then, to rely on the "general understanding" of whether restaurants preparing food for customers are "processors." Your office has concluded that such is the "general understanding," and we are not prepared to say otherwise.

You also ask whether you may require a utility usage study to show both exempt and nonexempt use before granting an exemption. Article 151.317 is a provision exempting taxpayers from a tax that would otherwise be imposed. See Direlco, Inc. v. Bullock, 711 S.W.2d 360 (Tex. App. - Austin 1986, writ ref'd n.r.e.). A taxpayer claiming an exemption from taxation must prove the exemption clearly applies. Bullock v. National Bancshares Corp., 584 S.W.2d 268, 272 (Tex. 1979). Sections 111.001 and 111.002 of the Tax Code specifically authorize you to promulgate rules and regulations relating to the administration and enforcement of the limited sales, excise, and use tax. An agency may issue any rule in general harmony with the objectives of the authorizing statute. Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702, 706 (Tex. 1968). You may promulgate regulations requiring reports including information that you determine may be necessary for the proper administration of the limited sales, use and excise tax. Tax Code §151.406. The information you may require in such reports is of such a nature that the absence of the data would make the administration of the tax difficult, if not impossible.

_Houston Natural Gas Corp. v. Southwestern Apparel, Inc._, 558 S.W.2d 950 (Tex. Civ. App. - Austin 1977, writ dism'd).

Of course, any act by your office to change or add rules for the application of the exemptions in article 151 to a particular class of taxpayer must comply with the structures of the Administrative Procedure and Texas Register Act, article 6252-13a, V.T.C.S., and the Constitutions of Texas and the United States. See generally _Bullock v. Hewlett-Packard Co._, 628 S.W.2d 754 (Tex. 1982).

You also ask whether you may require a utility usage study to be done or reviewed by a registered engineer before recognizing an exemption under it. We believe that you must make the ultimate determination of what steps are "essential to the speedy and proper assessment and collection of the revenues of the state." V.T.C.S. art. 4344. You may require information the absence of which would make the collection of taxes difficult, if not impossible. _Houston Natural Gas v. Southwestern Apparel_, supra.

Because your regulations at present do not define either the scope or the contents of a "utility usage study," we are unable to say whether the studies must be conducted by a registered engineer. The Engineering Practice Act limits the "practice of engineering" to duly licensed engineers. V.T.C.S. art. 3271a, §1.2. The practice of "engineering" is defined in the act to mean

> any service or creative work, either public or private, the performance of which requires engineering education, training and experience in the application of special knowledge of the mathematical, physical, or engineering sciences to such services or creative work.

V.T.C.S. art. 3271a, §2(4).

Thus, if the preparation or review of a utility usage study requires the skills associated with engineering, it must be prepared by a registered engineer.

## S U M M A R Y

> The limited sales, excise, and use tax, chapter 151 of the Texas Tax Code, exempts from taxation sales of gas and electricity purchased processing tangible personal property for sale as tangible personal property. Tax Code art. 151.317. So long as the preparation of food by restaurants for sale to customers is generally understood as "processing," the exemption in article 151.317 for

gas and electricity sales applies. The comptroller of public accounts may require information from taxpayers without which taxes would be difficult, if not impossible, to collect. So-called "utility usage studies" submitted by a taxpayer in support of a claim for exemption from taxation may require preparation or review by a professional engineer licensed according to the Engineering Practices Act. V.T.C.S. art. 3271a.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Don Bustion
Assistant Attorney General