# CIRCUIT COURT OF THE CITY OF RICHMOND

Little Caesar's
of Richmond, Inc.

v.

Commonwealth of Virginia,
Department of Taxation

July 20, 1990

Case No. LM-4151-3

By JUDGE T. J. MARKOW

This matter is before the court on an application to correct an erroneous tax assessment. Plaintiff, Little Caesar's of Richmond, Virginia, Inc., is a Virginia corporation in the business of preparing and selling made-to-order, ready-to-eat hot pizzas for immediate off-premises consumption. Customers telephone the Little Caesar's facility and place an order for a custom baked pizza pie with the customer selecting the combination of toppings to be applied to the pizza. The pie is hot and ready to eat at the time the customer picks it up, and no further steps need to be taken in order to consume the pizza at that time. No Little Caesar's store has eat-in facilities of any kind. In fact, the licensing agreement with the franchiser prohibits such facilities.

The pizzas are prepared from scratch, using flour, water, spices, uncut blocks of cheese, and other ingredients which are processed on the store's premises in order to produce the pizzas. Each store has all of the necessary equipment, such as ovens, cutters, mixers, Lexans, and dough shapers to make large numbers of pizza from scratch. The use tax levied on that equipment at the time of its purchase is the basis of this action.

The Virginia Department of Taxation takes the position that because the equipment was purchased from out of state vendors, a use tax was due on those acquisitions when Little Caesar's acquired the tools and machinery. *See* Va. Code Ann. §§ 58.1-604, 58.1-606 (1990 Cum. Supp.).

Little Caesar's argues that its pizza-making operation is a manufacturing process that is industrial in nature, and therefore, the equipment purchased was exempt from the use tax. The section of the Code which creates that exemption reads, in pertinent part:

> Section 58.1-608. *Exclusions and exemptions.* -- The tax imposed by this chapter or pursuant to the authority granted in §§ 58.1-605 and 58.1-606 shall not apply to the following . . . .
> (3)(b)(iii) machinery or tools or repair parts therefor or replacements thereof, fuel, power, energy, or supplies, used directly in processing, manufacturing, refining, mining, or conversion of products for sale or resale . . . . Machinery, tools and equipment, or repair parts therefor or replacements thereof, shall be exempt if the preponderance of their use is used directly in processing, manufacturing, refining, mining or conversion of products for sale or resale.

Va. Code Ann. § 58.1-608(3)(b)(iii) (1990 Cum. Supp.).

Little Caesar's argues that because it does not provide eating facilities in its stores, it can be distinguished from another chain of restaurants which was denied the same exemption in a strikingly similar case. *See Golden Skillet Corp. v. Commonwealth*, 214 Va. 276, 199 S.E.2d 511 (1973). In that case, Golden Skillet was denied the benefit of the exemption under a prior codification of Section 58.1-608. The Supreme Court of Virginia affirmed the trial court's decision to deny the exemption and established that the statute required that the equipment be used in an *industrial* manufacturing setting in order to qualify for the exemption to the use tax sought by Golden Skillet.

Plaintiff attempts to distinguish the instant case from the *Golden Skillet* case by distinguishing between

the manner in which the two businesses are run. Little Caesar's provides no in-house dining, which Golden Skillet does, and Little Caesar's produces a final product that is substantially different than its component raw materials, whereas chicken did not undergo a substantial change in form when cooked. Thus, Little Caesar's argues that while Golden Skillet restaurants provide a dining service to which the cooking of food is incidental, Little Caesar's does not provide dining facilities, and therefore, the cooking is *not* incidental to the provision of restaurant services. Little Caesar's makes pizza from raw materials with no intention of serving a meal on the premises. Therefore, Little Caesar's business should be classified as industrial manufacturing.

Little Caesar's argues alternatively that even . if its system is not industrial, modifications to § 58.1-608 made subsequent to the Golden Skillet case make it unnecessary to find industrial manufacturing in order to entitle a taxpayer to the use tax exemption. The specific change it relies upon is the final sentence added to the relevant subpart (§ 58.1-608(3)(b)(v)), which reads:

> Machinery and equipment, or repair parts therefor, or replacement thereof, shall be exempt if the preponderance of their use is used directly in processing, manufacturing, refining, mining or conversion of products for sale or resale.

Va. Code Ann. § 58.1-608(3)(b)(v) (1990 Cum. Supp.).

In order to understand Little Caesar's position in this argument, it is necessary to examine the Supreme Court's analysis.

The Supreme Court, in *Golden Skillet*, made a close grammatical analysis of the language of § 58-441.6, the predecessor of § 58.1-608. The court observed that the subsection was a paragraph composed of a single sentence. The individual subparagraphs are divided only by semicolons. Therefore, the court stated that since the concept of "industrial" is introduced in the first part of the exemption paragraph/sentence, that same concept permeates the entire subsection, making it a required characteristic of manufacturing to allow use of the exemption. *Golden Skillet*, 214 Va. 276, 278, 199 S.E.2d 511, 514.

Plaintiff argues that the addition of the new *separate* sentence quoted above indicates a desire of the General Assembly to remove the industrial requirement from the exemption. This court, however, does not believe that the addition of this separate sentence renders the grammatical analysis of the Supreme Court void with regard to the *Golden Skillet* holding. Construing the subsection as a whole, this court finds that this new sentence in no way modifies the intent of the originally analyzed language. The two versions of the section are identical, except for this one sentence. The court finds instead that this sentence speaks directly to the *proportional* use of a particular piece of equipment, when that equipment is used in both industrial manufacturing processes *and* nonindustrial uses. Thus, the new sentence addresses only mixed use equipment. Where the equipment has but one regular use, as in the present case, the new sentence is irrelevant.

Plaintiff also argues that the addition of the heading to the subsection indicates that nonindustrial, commercial manufacturing equipment is subject to the exemption. That heading in ordinary type simply reads "3. Commercial and Industrial Exemption." However, that heading applies to *ten* consecutive paragraphs that includes not only the subsection in question, but also several unequivocally nonindustrial endeavors such as shipping, research, commercial air transportation and taxi service. Read in such a way as to preserve the unity and effectiveness of the whole subsection, that heading does not evince an intent of the legislature to modify *Golden Skillet.*

For the above reasons, the court finds that *Golden Skillet* still controls, and the activity for which the exemption is sought must be industrial in nature.

The question then arises whether or not the plaintiff's method of baking and selling hot ready-to-eat pizzas is industrial in nature. Besides the "chicken is not processed as is pizza" and "dining facility" arguments, plaintiff argues that by reference to the *Standard Industrial Classification Manual for 1987*, which is incorporated into the Virginia Code at § 58.1-602, the manufacture of pizza is industrial. Specifically, § 58.1-602 provides that:

"industrial in nature" shall include, but not be limited to, those businesses classified in

codes 10 through 14 and 20 through 39 published in the Standard Industrial Classification Manual for 1972 and any supplements issued thereafter.

Va. Code Ann. § 58.1-602 (1990 Cum. Supp.).

Plaintiff argues that pizzas are *exclusively* dealt with under Code 20 wherein one can find listed "Pizzas Frozen." Plaintiff is mistaken, however, since Code 58, "Eating and Drinking Places," includes pizzerias and pizza parlors. There is no definition of these terms within the SICM, nor is there a distinction made between a pizza parlor and a pizzeria. However, it is clear that Code 58 includes pizza and is geared overall toward operations that prepare food for *immediate on or off premises consumption.* Other eateries in this Code include "Carry-out Restaurant," "Fast Food Restaurant," and "Refreshment Stands," all of which could include not only a Little Caesar's store but also a Golden Skillet franchisee. Code 20 appears to deal with items that are most likely available in a grocery store frozen foods section, items which would require *further* processing to be eaten. The type of business pursued by Little Caesar's, like that of Golden Skillet, is clearly much more like those found in Title 58. They all provide a service, food preparation, that allows the customer to eat the product as soon as it reaches his or her hands.

Furthermore, any doubt as to the classification must be resolved in such a way as to narrow the class of exemptions under § 58.1-608. *See, e.g., Forst v. Rockingham Poultry Marketing Cooperative, Inc.,* 222 Va. 270, 279 S.E.2d 400 (1981).

The court, therefore, finds that it is the intended immediate consumption of the item in question, whether it be pizza or chicken, that determines its nonindustrial nature and not the degree or type of processing that goes into the production of the food item. Furthermore, the lack of dining facilities does not change the nonindustrial nature of the service of providing hot and ready food for immediate consumption. The SICM distinctions are very convincing in this respect. Therefore, it is the finding of this court that Little Caesar's of Richmond, Virginia, Inc., is not entitled to the exemption, and the assessment of the tax department is upheld.