## CIRCUIT COURT OF THE CITY OF RICHMOND

Old Dominion Camera Shop, Inc.

v.

Department of Taxation

February 23, 1996

Case No. LA-680-4

BY JUDGE RANDALL G. JOHNSON

Plaintiff filed this action under Va. Code § 58.1-1825 to correct what it claims was an improper assessment of state sales and use taxes assessed on supplies and equipment used by plaintiff in processing and developing photographic film and pictures. The assessment was made in 1992, and resulted in a contested tax of $5,403.10, which has been paid. Trial was held on February 13, and the case was taken under advisement.

Plaintiff is a "camera shop" located in the "Fan" district of Richmond. It sells cameras, lenses, camera bags, film, developing equipment, picture frames, and just about anything else generally associated with cameras and photography. It also develops film and makes copies and enlargements of photographs. The questioned assessments involve these latter endeavors, generally referred to as film or photo processing, or photo finishing, and the property on which the questioned taxes were levied are the supplies and equipment used in the photo-finishing process. The supplies at issue are the chemicals, developer, fixer, bleach, etc., and the paper used in the process. The equipment are a "minilab" and a "silver recovery" unit. The minilab has two components: a film processor and a paper processor. Undeveloped film from a customer's camera is placed in the film processor to create negatives. The negatives are placed in the paper processor to create photographs. Developed pictures are copied or enlarged by actually taking a picture of the picture, making a negative from the film, and making a photograph from the negative, the last two steps being the same as those involved in developing film from a customer's camera. The silver recovery unit is used to collect the residue of chemicals which are applied

to the film, negatives, and paper during the developing process, as well as chemicals which are manufactured into the film and paper and which are released during the process. The taxes levied against plaintiff were based on an assessed value of $13,336.40 for the supplies, and $94,478.45 for the equipment.[1]

Va. Code §§ 58.1-603 and 58.1-604 impose the sales and use taxes in Virginia. By their terms, those taxes apply to the sales and/or use of "tangible personal property in the Commonwealth," and plaintiff's supplies and equipment obviously fall within the broad scope of that description. Section 58.1-609.3, however, lists "commercial and industrial exemptions" from those taxes, and plaintiff relies on those exemptions here. Specifically, plaintiff relies on § 58.1-609.3(2), which provides, in the part pertinent to this case, as follows:

> § 58.1-609.3. *Commercial and industrial exemptions.*—The tax imposed by this chapter or pursuant to the authority granted in §§ 58.1-605 and 58.1-606 shall not apply to the following . . . .
>
> 2.(i) Industrial materials for future processing, manufacturing, refining, or conversion into articles of tangible personal property for resale where such industrial materials either enter into the production of or become a component part of the finished product; (ii) industrial materials that are coated upon or impregnated into the product at any stage of its being processed, manufactured, refined, or converted for resale; (iii) machinery or tools or repair parts therefor or replacements thereof, fuel, power, energy, or supplies, used directly in processing, manufacturing, refining, mining, or converting products for sale or resale . . . .

---

[1] At trial, a representative from the Department of Taxation explained that supplies given to the customer, i.e., the paper on which the image is printed to make a photograph, as well as the chemicals which become a part of the photograph, are not taxed since plaintiff, the camera shop, is not the "ultimate purchaser" of those products in the chain of commerce. *See Commonwealth v. Miller-Morton,* 220 Va. 852, 856, 263 S.E.2d 413 (1980); *Jefferson v. Tax Comm.,* 217 Va. 988, 992, 234 S.E.2d 297 (1977); *Commonwealth v. Bluefield Sanitarium,* 216 Va. 686, 688-89, 222 S.E.2d 526 (1976). The Department's representative could not explain, however, why the chemicals used in creating negatives from undeveloped film, and which become a part of the negatives which also are given to the customer, *are* taxed. This inconsistency, while interesting, is irrelevant in light of the court's view of the case.

In *Golden Skillet Corp. v. Commonwealth*, 214 Va. 276, 199 S.E.2d 511 (1973), the taxpayer claimed that the equipment sold by it to its franchisees and used by those franchisees in preparing and cooking chicken for sale at retail was "processing, manufacturing, or conversion" of products for sale, and was, therefore, included within the "machinery or tools" exemption of Va. Code § 58-441.6, the predecessor to § 58.1-609.3(2) set out above. The Supreme Court did not agree. Instead, the Supreme Court held that the subject exemption applied "only to true manufacturers or industries, and not to retailers such as restaurants." 214 Va. at 278. In other words, the exemption "is intended . . . to provide exemption for machinery and tools used in processing, manufacturing, refining, mining, or conversion of products for sale or resale only *in the industrial sense.*" *Id.* (emphasis in the original). Thus, the question in the case at bar is whether photo finishing is an industrial enterprise, as claimed by plaintiff, or a retail one, as claimed by the Department of Taxation. The court finds that it is industrial.

In arguing against exemption, the Department seeks to analogize the taxpayer's "processing" chicken into seasoned and cooked chicken for sale to customers in restaurants in the *Golden Skillet* case to the present plaintiff's "processing" raw, undeveloped film into negatives and finished photographs for sale to customers in its camera shop. The analogy is not valid. In *Commonwealth v. Orange-Madison Coop.*, 220 Va. 655, 261 S.E.2d 532 (1980), in which the Department argued that a taxpayer's feed and fertilizer processing operations were analogous to the chicken processing operation in *Golden Skillet*, the Supreme Court made it clear that the holding of *Golden Skillet* is not to be given too liberal a reading. Specifically, the Court said that the term "processing" as used in the statute must be given its usual, everyday meaning, and that the word "process" means:

> to subject to a particular method, system, or technique of preparation, handling or other treatment designed to effect a particular result: put through a special process: as . . . (1): to prepare for market, manufacture, or other commercial use by subjecting to some process (processing cattle by slaughtering them) (processed the milk by pasteurizing it) (processing grain by milling) (processing cotton by spinning) (2): to make usable by special treatment (processing rancid butter) (processing waste material) (processing the water to remove impurities)

220 Va. at 658 (*quoting* Webster's Third International Dictionary (1966).

Then, after recognizing that preparing and cooking chicken for sale at retail, as was the case in *Golden Skillet*, fits the literal definition of processing just given, the Court explained:

> Not all processing, however, qualifies for the exemption set forth in Code § 58-441.6. In *Golden Skillet, supra,* we concluded that this exemption applied only to "machinery and tools used in processing, manufacturing, refining, mining, or conversion of products for sale or resale only *in the industrial sense.*" 214 Va. at 278, 199 S.E.2d at 514 (emphasis in original). *Because "[c]ommon sense tells us that the process of preparing and frying chicken for sale at retail . . . is not an industrial operation," 214 Va. at 279, 199 S.E.2d at 514, we rejected Golden Skillet's claim that its machinery and equipment used in processing chicken for sale at retail to its customers were exempt under Code § 58-441.6.*

220 Va. at 658 (second emphasis added).

While not quite the same as Justice Stewart's pronouncement about hard-core pornography ("I know it when I see it"),[2] the Virginia Supreme Court's reliance upon common sense to exclude the chicken preparation process from the subject exemption in *Golden Skillet* is a clear indication that its holding in that case is pretty much limited to that case's facts. When applied to the facts of this case, common sense mandates a different result.

Unlike *Golden Skillet*, in which the product going in, chicken, was the same as the product coming out, chicken, only "prepared" and cooked, the product going in in the present case, film, is vastly different from the product coming out, photographs. In fact, even if the court were to apply the definition of processing urged by the Department in *Orange-Madison*, that is, "a transformation of a raw material into an article or product of substantially different character," (220 Va. at 657) a definition which the Supreme Court rejected as too "stringent" (*id.* at 657-58), plaintiff's photo-finishing business would qualify since a finished photograph is of a substantially different character than undeveloped film. Moreover, while millions of people in this country prepare and cook chicken in their homes every day, thereby lending great support to the argument that such process

---

[2] *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S. Ct. 1676, 12 L. Ed. 2d 793 (1964).

is not industrial, turning film into photographs is not an enterprise routinely carried out by nonprofessionals. It requires special chemicals and equipment — in this case assessed at over $100,000 — as well as special training and expertise. Indeed, even in the face of modern cameras, such as those made by Polaroid, which allow all of us to take pictures which are developed instantaneously and without professional help, most people still prefer using cameras which require professional developing. The same cannot be said about cooking chicken, something which, as just noted, most households routinely do at home. To paraphrase Justice Stewart, this court does not attempt to define the kinds of enterprises which are industrial in nature, but the court knows them when it sees them. Plaintiff's photo finishing enterprise is industrial.

Lastly, the Department argues that even if plaintiff's photo-finishing operation *is* industrial, it is not exempt because it is only an incidental part of plaintiff's business. *See* Department of Taxation Regulations, VR 630-10-63(B)(1) ("Establishments which manufacture or process tangible personal property as an *incidental* part of a retail or service business are generally deemed to be engaged in *non*-industrial activities" (emphasis added)). Plaintiff's photo-finishing operation is not an incidental part of its business.

"Incidental" is defined by Webster's as follows:

> 1: being likely to ensue as a chance or minor consequence . . . 2: occurring merely by chance or without intention or calculation.

Webster's Ninth New Collegiate Dictionary (1987).

In this case, plaintiff's owner testified, without contradiction, that plaintiff's photo-finishing work makes up 75-80% of its customer transactions, and approximately 35% of its net profit. In fact, no other single aspect of plaintiff's business is as profitable to plaintiff as its photo finishing business. This is far from being incidental.

For the reasons discussed above, the court finds that the taxes in question were improperly assessed against plaintiff and will order that those taxes, which have been paid, be refunded.