In the Matter of MODERN REFRACTORIES SERVICE CORPORATION et al., Petitioners, v JOHN P. DUGAN et al., Constituting the State Tax Appeals Tribunal, Respondents.

Third Department, November 1, 1990

## APPEARANCES OF COUNSEL

*Albrecht, Maguire, Heffern & Gregg, P. C. (Ronald A. Sutton* of counsel), for petitioners.

*Robert Abrams, Attorney-General (Nancy A. Spiegel* and *Wayne L. Benjamin* of counsel), for Commissioner of Taxation and Finance, respondent.

## OPINION OF THE COURT

LEVINE, J.

Petitioner Modern Refractories Service Corporation (hereinafter petitioner) is in the business of installing, repairing and otherwise servicing refractory products, i.e., gunite and brick work in heat treat, blast and forging furnaces and coke ovens, primarily for coke and utility companies. Traditionally, repair and servicing of such ovens and furnaces required them to be completely shut down so that interior temperatures could be cooled sufficiently to permit service personnel to work inside. In 1978 or 1979, at the request of one of its customers, Donner-Hanna Coke Company, petitioner began the development of a "hot suit", a special kind of protective clothing with breathing and cooling apparatuses to enable the wearer to work in an environment where the temperatures are in the high 100's of degrees. In this way, the repair and servicing of the furnaces and coke ovens could be accomplished without the necessity of any extensive shutdown of operations, which were very costly to petitioner's customers.

Petitioner Robert Kish, petitioner's president, was its principal witness in the administrative proceedings in this matter. Kish described the process of development of the hot suit system as one of trial and error achieved "[o]ver a couple of years", in which materials would be tested through actual use by petitioner's service personnel in the Donner-Hanna ovens. In September 1982, Kish and several other persons applied for a patent on the hot suit system, which was ultimately granted in 1984.

Following audits for the periods March 1, 1980 through November 30, 1982 and December 1, 1982 through February 28, 1985, the Department of Taxation and Finance assessed additional sales and use taxes against petitioner. Part of these assessments resulted from the disallowance of the research and development exemption (Tax Law § 1115 [a] [10]) claimed by petitioner on recurring purchases of over $92,000 in the first audit period and over $12,000 in the second audit period,

all of which allegedly were involved in the development of the hot suit. Petitioner took administrative appeals from the assessments, raising objections, *inter alia,* to disallowance of the research and development exemption for its hot suit-related purchases. The claim in this regard was ultimately rejected by the Tax Appeals Tribunal.

The Tribunal held that petitioner failed to establish three necessary statutory elements of the research and development exemption, namely, that the properties in question were "purchased for use or consumption [1] *directly* and [2] *predominantly* in research and development [3] *in the experimental or laboratory sense"* (Tax Law § 1115 [a] [10] [emphasis supplied]). The factual basis for this conclusion was the evidence that, during both audit periods, the hot suit system was being used in actual commercial operation by petitioner in servicing and repairing its customers' ovens. Indeed, as early as September 1981, petitioner was billing Donner-Hanna for use of two hot suits, at the rate of $40 per hour, in connection with work on the ovens. The Tribunal held that such commercial use was outside the scope of the research and development exemption and, without a more clear-cut delineation of the earlier stages of evolution of the hot suit, petitioner failed to sustain its burden of establishing entitlement to the exemption. The Tribunal stated, "we do not conclude that there was no research and development phase for the development of the 'Hot Suit' but only that petitioner has not proved when this research and development phase occurred".

The determination by the Tribunal must be confirmed. The Tribunal could reasonably conclude, consistent with the language of both the statute and regulations, that once a product's development reaches the stage of being capable of operational use and is actually so used in commercial operations, the research and development exemption for product purchases related to such operations no longer applies. At the least, any further research and development in such commercially operational use can hardly be deemed to be performed "in the experimental or laboratory sense" (Tax Law § 1115 [a] [10]). Moreover, the regulations, the validity of which has not been challenged here, provide that "[u]sage in activities *collateral* to the actual research and development process is not deemed to be used directly in research and development" (20 NYCRR 528.11 [c] [emphasis supplied]). Petitioner has not explained here why research and development of the hot suit system could not have been satisfactorily conducted under

conditions other than in commercial operations for a customer. Therefore, it was rational for the Tribunal to consider usage in such activities as collaterally and not directly involved in research and development. In thus limiting the application of Tax Law § 1115 (a) (10), the Tribunal acted consistently with the principle that statutory tax exemptions are to be strictly and narrowly construed (see, Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196; Matter of Blue Spruce Farms v New York State Tax Commn., 99 AD2d 867, affd 64 NY2d 682).

The record also supports the Tribunal's finding that petitioner failed to prove that its purchases during any part of the audit periods related to some earlier stage in the evolution of the hot suit, before it was used commercially. According to Kish, development of the hot suit could have begun as early as 1978 and produced a functional product in about two years. Once parts or materials were tried and found to work, they were reordered. The suits in actual operation had a useful life of 40 hours. Thus, replacement of parts and materials during ordinary use was to be expected. Many of the more costly items purchased in conjunction with the hot suit before petitioner began actually billing Donner-Hanna for its use in commercial operation were the same items as petitioner purchased thereafter. Without necessarily deciding that under no circumstances could purchases for research and development in conjunction with a functional product in actual commercial operation qualify for the exemption under Tax Law § 1115 (a) (10), we conclude that here the Tribunal's denial of the exemption was rational and supported by substantial evidence and must, therefore, be confirmed (see, Matter of Midland Asphalt Corp. v Chu, 136 AD2d 851, 852-853, lv denied 72 NY2d 806; Matter of Craftmatic Comfort Mfg. Corp. v New York State Tax Commn., 118 AD2d 995, 997-998 [dissenting mem], revd on dissenting mem below 69 NY2d 755).

MAHONEY, P. J., CASEY, MIKOLL and YESAWICH, JR., JJ., concur.

Determination confirmed, and petition dismissed, without costs.