KUSKIN, J.T.C.
Plaintiff, Urso & Brown, Inc., predecessor to Al Gar/The Display Connection, Inc., sells custom-designed point-of-sale merchandise displays to retailers. As part of the design and sales process, plaintiff purchases, and provides to prospective customers, prototype displays fabricated by third parties based on plaintiffs designs. The Director, Division of Taxation (Defendant) imposed sales and use tax on plaintiffs purchases of prototypes. Plaintiff contends that the purchases are not subject to tax because: (a) plaintiff provides the materials used to fabricate the prototypes, and the statute imposing tax covers only those transactions where the fabricator supplies the materials, and (b) the prototypes are inconsequential elements of transactions involving *252 the purchase of fabrication services. Plaintiff also contends that its purchases are exempt from taxation because the prototypes are used directly and primarily in the manufacture of displays or because the prototypes are used for research and development. For the reasons discussed below, I hold that the purchases are taxable and do not qualify for either of the exemptions asserted by plaintiff.
The parties submitted a Stipulation of Facts, which was supplemented by a hearing at which both plaintiff and defendant, called plaintiffs president, Richard Urso, as them only witness. Based on the Stipulation of Facts and Mr. Urso’s testimony, I make the following factual findings.
Plaintiff designs and produces point-of-purchase displays for merchandise sold in retail stores. When a prospective customer contacts plaintiff to request a display for particular merchandise or products, plaintiff prepares a design to suit the customer’s needs. Plaintiff may (but does not always) request the customer’s approval of the design sketch. After the design sketch is completed, plaintiff arranges for preparation of a prototype display by a fabricator. One of plaintiffs representatives meets with the fabricator to discuss the design and the customer’s needs, including the length of time the customer anticipates using the display. The fabricator then prepares a prototype based on the discussion and the design sketch presented by plaintiff. The materials used for the prototype are selected by plaintiff. Upon receipt of the prototype from the fabricator, plaintiff cheeks the prototype for stability and sturdiness, makes design changes if necessary, and presents the prototype to the customer for approval. The customer either approves the prototype and places an order with plaintiff, requests design changes before placing an order, or decides not to order displays from plaintiff. Plaintiff begins manufacture of displays to fill a customer’s order only after the customer has approved the prototype.
In addition to preparing a prototype, the fabricator prepares construction drawings or blueprints for the display. These are *253 used to make revisions to the design, and, ultimately, for the preparation of tooling by plaintiff to be used by it to produce the display if the customer places an order. Even though the drawings or blueprints are available, plaintiff may take the measurements necessary to prepare the tooling from the prototype if the design is not complicated. The prototype, however, is not essential for production of tooling because of the availability of the drawings or blueprints.
Plaintiff generally does not charge its customer for a prototype. Plaintiff may impose a charge if the customer wishes to test the display in the customer’s store premises and requests multiple prototypes for such testing, or if plaintiff has no prior relationship with a customer who requests the preparation of a very elaborate display. Plaintiff did not charge its customers for any of the prototypes which are the subject of this appeal.
Once a customer places an order and plaintiff begins to manufacture the displays, the prototype has no further utility. Even if the customer does not place an order, the prototype generally has no further utility because each customer requires a custom design. As a result, a prototype designed for one customer will have no role in effecting a sale of displays to a different customer or in the production of displays for a different customer.
Plaintiffs purchase of prototype displays at issue in this appeal were made from five fabricators, four of which were located in New' Jersey. The other fabricator was located in New York. None of the New Jersey fabricators collected sales tax from plaintiff, and plaintiff did not pay use tax with respect to purchases from the New' York fabricator. The total amount of tax in issue is $17,609. Interest through May 20, 2000 totals an additional $18,931.
Four issues are presented for determination by the court:
(A) does plaintiff provide the materials used to fabricate the prototypes so as to be liable: (1) for sales tax under N.J.S.A. 54:32B-3(b)(1), which imposes tax on purchases of production fabrication, and other services where the purchaser “directly or indirectly furnishes the tangible personal property ... upon which *254 such services are performed” or (2) for use tax under N.J.S.A. 54:32B-6(C) which imposes tax on the use in New Jersey of “any tangible personal property, however acquired, where not acquired for purposes of resale, upon which any taxable services described in [N.J.S.A. 54:32B-3(b)(1) and (2)] have been performed”;
(B) if plaintiff does not provide the materials used to fabricate the prototypes, is plaintiff liable for use tax under N.J.S.A. 54:32B-6(A), which imposes tax on the use in New Jersey of “any tangible personal property purchased at retail” or under N.J.S.A. 54:82B-6(C);
(C) are plaintiffs purchases exempt from taxation under N.J.S.A. 54:32B-8.13(a), which provides an exemption for receipts from sales of “machinery, apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining”; and
(D) are plaintiffs purchases exempt from taxation under N.J.S.A. 54:32B-8.14, which provides an exemption for receipts from sales of “tangible personal property ... purchased for use or consumption directly and exclusively in research and development in the experimental or laboratory sense.... ”
Three general principles are applicable to a consideration of these issues. The fust principle is that an assessment of sales or use tax is presumptively correct. See Atlantic City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130, 146, 95 A.2d 895 (1953) (citation omitted); H.J. Bradley, Inc. v. Director, Div. of Taxation, 4 N.J.Tax 213, 229 (Tax 1982) (citation omitted). The second principle is that receipts from sales of property or receipts from services enumerated in N.J.S.A. 54:32B-3(a), (b), and (c) are presumptively taxable, N.J.S.A. 54:32B-12(b), and, therefore, “where the taxpayer ... urge[s] exclusion from the scope of the taxing statute, ‘the probable legislative intent is one of inclusion and exemptions are to be construed narrowly.’ ” Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 319-20, 526 A.2d 1029 (1987), aff'd, 490 U.S. 66, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989) (citation omitted). The third general principle is that tax *255 exemptions are “strictly construed because an exemption from taxation is a departure from the equitable principle that everyone should bear his just and equal share of the public tax burden.” Phelps Dodge Ind., Inc. v. Director, Div. of Taxation, 8 N.J.Tax 354, 358 (Tax 1986).
In applying these general principles, I will address first the issue of whether the statutory language imposes sales or use tax on plaintiffs acquisition of the prototypes, and then plaintiffs two claims of exemption from tax.
(A) Plaintiffs Liability for Sales Tax Under N.J.S.A. 54:32B-3(b)(1).
The statutory basis for the sales tax imposed by defendant is N.J.S.A. 54:32B-3(b)(1), which provides that a sales tax shall be paid on receipts from “[p]roducing, fabricating, processing, printing or imprinting tangible personal property, performed for a person who directly or indirectly furnishes the tangible personal property, not purchased by him for resale, upon which such services are performed.” Plaintiff does not contend that it purchased the prototypes for resale. Plaintiff asserts that the statutory language does not apply to its purchases for two reasons: (1) the fabricators, and not plaintiff, provided the materials used for constructing the prototypes, and (2) even if plaintiff provided the materials, the value of the materials and, thus, the prototypes themselves were “de minimis ” elements of a transaction in which plaintiff purchased fabrication services.
Whether plaintiff provided the materials used to make the prototypes is a fact question. The Stipulation of Facts submitted by the parties included a letter from an accountant for plaintiff addressed to the New Jersey Division of Taxation. The letter included the following statement: “It is the taxpayer’s practice to provide third-party designers with taxpayer’s own material.... ” A letter from one of the prototype fabricators to another accountant for plaintiff, written in response to a request from the accountant for a description of the prototype preparation process, contains the following:
*256 I am in the business of designing and creating models of various types of point-of-purchase display projects. When a client has need of my specialized services, they will provide me with preliminary drawings and I will then discuss in detail with the appropriate person the work I must perform in connection with the project. In addition, I will create designs for the company based on the needs of the client. The client will supply me with material from which the point-of-purchase display will be constructed, so that I may not only design the project, but also create the model from which the tools and dies will be constructed.
Typically, I will construct a sample or samples of the display until a suitable prototype is involved. The only thing I do for my clients is render services.
These two letters contradict the testimony of plaintiffs president, Richard Urso, that, generally, the fabricator provides the materials for the prototypes, except for specialized materials which are supplied by plaintiff. Mr. Urso had no explanation for the conflict between his testimony and the contents of the letters. Invoices from the prototype manufacturers do not assist in resolving the conflict because they do not contain separate charges for design services, labor, or cost of materials, but simply set forth an aggregate price for each prototype. Mr. Urso did not bring to court information which would have enabled him to explain the invoice charges.
Mr. Urso’s credibility on the issue of who supplied the materials for the prototypes is suspect for three reasons: (i) the two letters described above, prepared outside the context of this appeal, directly contradict his testimony, (ii) he was vague in explaining the conflict between the letters and his testimony, and (iii) he failed to present at trial information available to him from which he could explain and, perhaps, provide a breakdown of, each fabricator’s invoice, under circumstances where establishing the existence of fabricator charges for materials obviously was important to support plaintiffs contentions. I find, therefore, that plaintiff provided the materials for the prototypes. Based on this factual finding, plaintiffs purchases of the prototypes in issue satisfy the requirements of N.J.S.A. 54:32B-3(b)(1) and are subject to sales tax. The tax should have been collected by the prototype fabricators located in New Jersey, but they failed to do so. Under N.J.S.A 54:32B-14(b), which imposes liability on the customer for taxes not collected by the party required to collect the tax, plaintiff is liable for the tax that the fabricators failed to *257 collect. One prototype fabricator was located in New York. Under N.J.S.A. 54:32B-6(C), plaintiff is liable for use tax with respect to prototype purchases from that fabricator because the prototypes constituted tangible personal property acquired by plaintiff upon which fabrication services described in N.J.S.A. 54:32B-3(b)(1) were performed.
 I reject plaintiffs contention that, even if plaintiff provided the materials used by the prototype fabricator, the transactions between plaintiff and the fabricators are not subject to sales or use tax because the essence of the transactions was the purchase of fabrication services and the prototypes constituted a de minim-is element of the transactions. Plaintiff cited no statutory or decisional authority in support of this contention. Presumably, the basis for plaintiffs argument is N.J.S.A. 54:32B-2(e)(4)(A) which excludes from the definition of “retail sales” subject to tax “fpjrofessional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made.”
The transactions between plaintiff and the prototype fabricators do not fit within the provisions of this definition for two reasons. First, the transactions were not “[professional, insurance or personal service transactions,” and plaintiff does not claim that they were. Second, the prototypes themselves were not an “inconsequential element” of the transactions.
A determination of whether tangible personal property is an “inconsequential element” of a transaction must be guided by the “real object” test. Under this test, the inquiry is whether the real object of the transaction was the obtaining of the tangible personal property, here the prototypes, or whether the acquisition of the personal property was merely incidental to the underlying transaction. See Dow Jones & Co. v. Director, Div. of Taxation, 5 N.J.Tax 181, 188-90 (Tax 1983), aff'd, 193 N.J. Super. 80, 472 A.2d 168 (App.Div.), certif. denied, 99 N.J. 153, 491 A.2d 668 (1984); see also Spencer Gifts, Inc. v. Director, Div. of Taxation, 182 N.J.Super. 179, 202-206, 3 N.J.Tax 482, 505-508, 440 A.2d 104 (Tax 1981).
*258 As Mr. Urso’s testimony demonstrated, plaintiffs “real object” in its transactions with the prototype fabricators was to acquire the prototypes for use in effecting sales. Plaintiff was not concerned with the fabrication methods or techniques used by the fabricators. Nor was plaintiff concerned with whether the fabricators subcontracted some or all of the fabrication work. The prototypes, therefore, were no more a de minimis or inconsequential element of the transactions than an item of furniture would be if produced by a custom furniture maker from materials supplied by the purchaser.
(B) Plaintiffs Liability for Use Tax if the Fabricator Supplied the Materials for the Prototypes.
Because of my factual finding that plaintiff provided the materials used to fabricate prototype displays, I need not address defendant’s contentions that, even if the New Jersey fabricators provided the materials, the transactions are subject to tax under N.J.S.A. 54:32B-6(A) or -6(C). I note, however, that, if the fabricators provided the materials, then the transactions between plaintiff and the fabricators would be taxable as retail sales of tangible personal property under N.J.S.A. 54:32B-3(a) or N.J.S.A. 54:32B-6(A).
(C) Exemption From Taxation Under N.J.S.A. 54:32B-8.13(a).
Plaintiff contends that even if the subject transactions would be subject to tax under N.J.S.A. 54:32B—3(b)(1), -3(a), -6(A), or -6(C), the transactions are exempt from taxation under N.J.S.A. 54:32B-8.13(a), which provides an exemption for receipts from sales of apparatus or equipment “for use or consumption directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining.” No legislative history exists which provides guidance in interpreting the phrase “directly and primarily” as used in this statute. By regulation, however, defendant has defined direct use in production as occurring “only when ... [machinery, apparatus or equipment] is used to initiate, sustain or terminate the transformation of raw materials into finished products.” N.J.A.C. 18:24-4.4(c). Factors to be considered in determining direct use include:
*259 1. The physical proximity of the property in question to the production process in which it is used.
3. The active causal relationship between the use of the property in question and the production of a product. The fact that particular properly may be considered essential to the conduct of manufacturing, processing, assembling or refining because its use is required either by law or practical necessity does not, of itself, mean that the property is used directly in manufacturing, processing, assembling or refining.
I/intf.J
Plaintiff has not challenged the validity of this regulation.
Mr. Urso testified that prototypes for uncomplicated displays are sometimes used as a basis for measurements in the preparation of the tooling for manufacture of the displays, but the prototypes are not necessary for this purpose because the prototype fabricators provide detailed drawings or blueprints which include precise measurements for each prototype. Mr. Urso also testified that plaintiff always used the prototypes as an integral and important part of plaintiff’s sales presentation so that a prospective customer could see a sample before placing an order. Based on this testimony, I conclude that the prototypes are used neither “primarily” nor “directly” in the production of manufacturing tooling as required by N.J.S.A. 54:32b-8.13(a) to qualify for exemption. Mr. Urso established that plaintiff prepared a prototype only for a specific customer before receiving an order from the customer, and that the primary use of the prototype was as a sales device. The occasional use of a prototype as the basis for measurements does not constitute direct use in the manufacturing process, and does not satisfy any of the standards established by defendant’s regulation for direct use. In fact, the prototypes are no more directly involved in plaintiffs manufacturing process than the ruler, tape or caliper used to measure them.
Plaintiffs use of the prototypes is substantially and significantly different from the use of machinery to produce photomasks described in GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 625 A.2d 468 (1993), and the use of the silk screen parts discussed in Panta Astor, Inc. v. Taxation Div. Director, 8 N.J.Tax 464 (Tax 1986). In those cases, the personal property at *260 issue was integral to, and integrated into, the manufacturing process. Plaintiffs prototypes are unnecessary for, and generally not used in, plaintiff’s manufacturing process.
The subject transactions between plaintiff and the prototype fabricators do not qualify for exemption under N.J.S.A. 54:32B-8.13(a).
(D) Exemption From Taxation Under N.J.S.A. 54:32B-8.14.
The transactions also do not qualify for the exemption contained in N.J.S.A. 54:32B-8.14, which applies to receipts from sales of tangible personal property purchased for use “directly and exclusively in research and development in the experimental or laboratory sense ....” The terms “research and development” and “experimental or laboratory sense” are not defined in the Sales and Use Tax Act or by regulation, except that N.J.S.A. 54:32B-8.14 excludes from “research and development” the “ordinary testing or inspection of materials or products for quality control ... advertising, [or] promotions ....” No reported decision of the New Jersey courts has defined or interpreted the statutory terminology, nor is there any legislative history which provides assistance in fashioning a definition or interpretation.
Statutes enacted in several states, e.g. Maine, Me.Rev.Stat. Ann. tit. 36, § 1760(32) (West 2000), New York, N.Y. Tax Law § 1115(a)(10) (McKinney 2000), South Carolina, S.C.Code Ann. § 12-36-2120(56) (Law.Co-op.2000), and Virginia, Va.Code Ann. § 58.1-609.3(5) (Michie 2000), also provide exemptions from sales and use tax for purchases of tangible personal property used for “research and development in the experimental or laboratory sense.” The New York sales and use tax statutes have been described as the source from which the New Jersey Sales and Use Tax Act was derived. See New Jersey Bell Tel. Co. v. Director, Div. of Taxation, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div. 1977) (Horn, J., concurring), certif. denied, 75 N.J. 594, 384 A.2d 824 (1978). Administrative regulations adopted by the New York Department of Taxation and Finance define “research and development in the experimental or laboratory sense” as follows:
“research which has as its ultimate goal:
*261 (i) basic research in a scientific or technical field of endeavor;
(ii) advancing* the technology in a scientific or technical field of endeavor;
(iii) the development of new products;
(iv) the improvement of existing* products; and
(v) the development of new uses for existing products.”
[N.Y.Comp.Codes R. & Reg. tit. 20 § 528.11(b)(i) (2000).]
Other provisions of the regulation exclude from exemption items similar to those excluded in N.J.S.A. 54:32B-8.14.
The regulations adopted by the Virginia Department of Taxation with respect to that state’s “research and development in the experimental or laboratory sense” exemption are the most comprehensive of the regulations adopted in states providing the exemption. The Virginia regulations include the following definitions:
“Experimental sense” means work is conducted through tests, trials, tentative procedures, or policies adopted under controlled conditions to discover, confirm, or disprove something* doubtful.
“Laboratory sense” means work is conducted in a place equipped for experimental study in a science and providing an opportunity for experimentation, observation, or practice in a field of basic scientific or traditional physical science research.
“Research and development” means a systematic study or search directed toward new knowledge or new understanding of a particular scientific or technical subject and the gradual transformation of this new knowledge or new understanding into a usable product or process. Research and development must have as its ultimate goal: (i) the development of new products; (ii) the improvement of existing products; or (iii) the development of new uses for existing products. Research and development does not include the modification of a product merely to meet customei* specifications unless the modification is carried out under experimental or laboratory conditions in order to improve the product generally or develop a new use for the product.
[23 Va. Admin. Code 10-210-3070(A).]
These definitions appear to have been derived from the Virginia Supreme Court’s decision in Commonwealth v. Research Analysis Corp., 214 Va. 161, 198 S.E.2d 622 (1973), where the court defined the “research and development in the experimental or laboratory sense” exemption by using dictionary definitions and terminology now appearing in the regulations but not adopted as of the date of the decision. 198 S.E.2d at 625. The court concluded that the exemption was restricted to purchases or leases of tangible per *262 sonal property “used in scientific or traditional physical science research and development which generates new tangible products or new processes, or the improvement of existing products or processes .... ” Ibid.
This court is not bound by statutory interpretations made by courts or administrative authorities in other states. See United States Cas.Co. v. Hercules Powder Co., 4 N.J. 157, 168, 72 A.2d 190 (1950) (citation omitted); In re Summit and Elizabeth Trust Co., 111 N.J.Super. 154, 166, 268 A.2d 21 (App.Div.1970). However, interpretations from other jurisdictions can, and often do, provide guidance and assistance in interpreting New Jersey statutes, particularly in the absence of any legislative history or regulations in this State. See James Constr. Co. v. Director, Div. of Taxation, 18 N.J.Tax 224, 234 (Tax 1999). Generally, in the absence of statutory or administrative definitions, words should “be given their generally accepted meaning, according to the approved usage of the language.” N.J.S.A. 1:1-1. Under this standard, dictionary definitions are appropriate for consideration. The pertinent dictionary definitions for “research,”, “development,” “experimental,” and “laboratory” are the following:
“research” means:
1: careful or diligent search 2: studious inquiry or examination; esp: investigation or experimentation aimed at the discovery and interpretation of facts, revision of accepted theories or laws in light of new facts, or practical application of such new or revised theories or laws....
[Webster’s Collegiate Dictionary 995 (10th ed.1996) ];
“development” means “the act, process, or result of developing,” and “develop” means “to work out the possibilities of ... to make available or usable....” Id. at 316-17;
“experimental” means “relating to or having the characteristics of experiment,” and “experiment” means “1 a: TEST, TRIAL... b: a tentative procedure or policy c: an operation carried out under controlled conditions in order to discover an unknown effect or law, to test or establish a hypothesis, or to illustrate a known law... 3: the process of testing: EXPERIMENTATION.” Id. at 409;
*263 “laboratory” means “a place equipped for experimental study in a science or for testing and analysis.” Id. at 65.
The Virginia administrative interpretation of the phrase “research and development in the experimental or laboratory sense,” and the similar interpretation contained in Commonwealth v. Research Analysis Corp., supra, particularly the emphasis on studies relating to scientific or technical fields, are consonant with the “generally accepted meaning” of the phrase and with the intent and purpose of N.J.S.A. 54:32B-8.14. Therefore, the Virginia interpretations provide the appropriate basis for evaluating plaintiffs exemption claim under this statute. The New York administrative definition, which omits Virginia’s emphasis on scientific and technical research, is susceptible to unduly broad interpretation. For example, the New York Commissioner of Taxation and Finance interpreted this definition as providing a sales tax exemption for purchases of materials used to create a prototype for a clothing article made with numerous materials and tested under various conditions for qualities including durability, fit, waterproofness, warmth, strength, and resilience during laundering, in order to determine if the clothing article could and should be manufactured in accordance with the original design. New York Dept. of Taxation and Fin., Advisory Opinion-Petition No. S960402C, TSB-A-96(63)S (Oct. 2, 1996).
When N.J.S.A. 54:32B-8.14 is interpreted in a manner consistent with the Virginia interpretations, plaintiffs use of the prototype displays does not qualify for exemption for two reasons. First, even if plaintiff uses the prototypes for “research and development in the experimental or laboratory sense,” this use is not the exclusive use. Second, plaintiffs use of the prototypes is not for “research and development in the experimental or laboratory sense.”
With respect to the first reason, N.J.S.A. 54:32B-8.14 requires that the tangible personal property purchased must be used “exclusively” for research and development. The predecessor to this statute and the predecessor to N.J.S.A. 54:32B-8.13(a) were originally enacted together as sections 8(n) and 8(m)(1), *264 respectively, of L. 1966, c. 30, and codified as N.J.S.A 54:32B-8(n) and -8(m)(1). Both provisions required that the tangible personal property purchased be used “directly and exclusively” for the exempt purpose. Shortly thereafter, N.J.S.A. 54:32B-8(m)(1) was amended to require only that tangible personal property be used “directly and primarily” (not “exclusively”) in the production process in order to qualify for exemption. L. 1966, c. 53, § 4. In 1980, N.J.S.A. 54:32B-8(m)(1) and -8(n) were re-codified as N.J.S.A. 54:32B-8.13(a) and -8.14, respectively. L. 1980, c. 105, §§ 25 and 26. The re-codification retained the “directly and primarily” standard in section 8.13(a) and the “directly and exclusively” standard in section 8.14. The use of the term “exclusively” in N.J.S.A. 54:32B-8.14, therefore, must be deemed intentional and accorded significance.
Defendant has, by regulation, defined “primarily” as used in N.J.S.A. 54:32B-8.13(a) as meaning “more than 50 percent of the time.” N.J.A.C. 18:24-4.4(d). No regulation defines “exclusively” as used in N.J.S.A. 54:32B-8.14. The applicable dictionary definitions for “exclusive” are “single, sole” and “whole, undivided.” Webster’s Collegiate Dictionary, supra at 404. Under the Virginia regulations, “[w]hen a single item is used both in exempt and nonexempt activities, it is not used exclusively in research activities and is taxable.” 23 Va. Admin. Code 10-210-3071(A). Plaintiff uses the prototypes mainly as a sales device. Examination of prototypes by plaintiff or a customer sometimes results in design modifications. Occasionally, prototypes serve as a source of measurements for manufacturing tooling. Even if either of the latter two uses constitutes “research and development in the experimental or laboratory sense” under N.J.S.A. 54:32B-8.14, the use is not the exclusive use of the prototypes. Indeed, plaintiff does not use the prototypes even primarily or predominantly for research and development.
The second reason plaintiff does not qualify for exemption under N.J.S.A. 54:32B-8.14 is that plaintiffs use of the prototypes does not satisfy the statutory requirement that the tangible personal property purchased be used for research and development. *265 In the absence of both uses, the statutory exemption does not apply. Plaintiff appears to contend that it uses the prototypes to develop new products or to improve existing products. Arguably, some aspects of plaintiffs use of the prototypes could constitute product “development.” The use, however, does not even arguably constitute “research” as required by N.J.S.A. 54:32B-8.14. To satisfy the statutory requirement, the research must be in the nature of a study which seeks new knowledge in, or a new understanding of, a scientific or technical field or subject. The goal of the research must be development of new products, development of new uses for existing products, or improvement of existing products. Plaintiff does not use the prototypes for any such study or development. Plaintiffs use of prototypes to satisfy the requirements of specific customers does not qualify for exemption. See 23 Va. Admin. Code 10-210-3070(A) (excluding from the definition of research and development “the modification of a product merely to meet customer specifications unless the modification is carried out under experimental or laboratory conditions in order to improve the product generally or develop a new use for the product”). See also In re Modem Refractories Service Corp. v. Dugan, 164 A.D.2d 69, 563 N.Y.S.2d 200 (1990) (holding that the use of materials purchased for development of heat protective clothing to be worn while cleaning hot blast furnaces and coke ovens did not constitute a direct and predominant use [ (the New York statute requires predominant not exclusive use) ] in research and development when the testing of the “hot suits” made from the materials occurred during the servicing and repairing of customers’ furnaces and ovens for which the taxpayer received payment).
Judgment will be entered in favor of defendant for taxes in the sum of $17,609, plus interest of $18,831, and additional interest at the statutory rate from May 20, 2000 to the date of payment of the taxes due.